In re **MARRIAGE OF JADWIN.**

**Lisa Bass JADWIN, Plaintiff-Appellant,**

v.

**Scott Clinton JADWIN, Defendant-Respondent.**

**No. 13307.**

Missouri Court of Appeals, Southern District, Division Three.

May 3, 1984.

Motion for Rehearing or Transfer Denied May 22, 1984.

David G. Neal, Eminence, for plaintiff-appellant.

David L. Wieland, Poole, Croessmann & Stevens, P.C. Springfield, for defendant-respondent.

HOGAN, Judge.

On this appeal from a judgment entered in a dissolution of marriage case, the sole question tendered is whether the trial court abused its discretion in denying the plaintiff an award of maintenance.

The parties were married May 17, 1980, and were finally separated November 22, 1982. No children were born of the marriage. We glean from the record that both parties are about 22 years of age; both appear to have secondary-school educations, and neither appears to have acquired any marketable skills.

The record discloses no marital estate of any consequence. The parties owned two automobiles, both encumbered, and some household goods. The marital estate was divided by agreement and the agreement was incorporated in the decree. No purpose would be served by going into the disposition of the marital estate; it is apparent that neither party had gainful employment or resources sufficient to provide his immediate needs; each was dependent upon parental indulgence and each party either had attained or is approaching the age at which the parental duty of support and maintenance normally terminates. The only award of maintenance which the trial court purported to make was an award of attorneys fees to the plaintiff.

 At the outset, it is recognized that gross and permanent disparity between the parties' capacity to work and earn is a sound reason for an award of maintenance or a disproportionate award of income-producing property so as to accommodate the needs of the parties. *In re Marriage of Harrison*, 657 S.W.2d 366, 370 [4, 5] (Mo. App.1983). It is also recognized that a husband may not escape from nor frustrate a trial court's efforts to provide maintenance by voluntarily reducing his income. *Klinge v. Klinge*, 554 S.W.2d 474, 476 (Mo. App.1977). Nevertheless, the governing and controlling principle here is that the duty of an appellate court to dispose of an appeal finally upon its merits presupposes a record and evidence upon which the court can act with some degree of confidence in the fairness and accuracy of its conclusions. *V.M. v. L.M.*, 526 S.W.2d 947, 949 (Mo.App.1975).

To illustrate the basis of the result we have reluctantly reached, some of the testimony will be set out. Plaintiff, at trial time, was 21 years of age. She had been employed at a Dairy Bell when she was 17

years of age, then at Otasco and Thrifty general merchandise. Thereafter she was then employed at Ziske Sales and Service. Her employment at Ziske paid her $3.35 per hour. Such is her employment experience, because she was married just before she graduated from secondary school. Her employment has been interrupted from time to time by attacks of rheumatoid arthritis. Upon direct examination, plaintiff testified that she was "totally disabled according to the Social Security people." No evidence of her award of monthly entitlement—$154—is before us, as was the case in *Harrison*, supra. We are aware of the uncertainty of the SSI disability program. *Harrison*, supra, 657 S.W.2d at 370.

However, on cross-examination, the plaintiff was interrogated and responded as follows:

"Q. Is it possible Mrs. Jadwin that if you became employed and put in some more quarters for Social Security that your disability might be increased?

A. The possibility of me getting disability would be very slim.

Q. Why is that Mrs. Jadwin?

A. Well once you go back to work after you've been on disability, they give you a nine (9) month trial period to see if you can work—

Q. Couldn't—

A. —if you decide—

Q. —couldn't you get in another quarter while you are working in that nine (9) months so you can increase the amount of benefits?

A. —oh I'm sure you probably could, yes." (Our emphasis.)

The plaintiff, before her marriage, had thought of attempting to obtain further education, but had since abandoned the idea. She also indicated that she intended to forego further attempts at employment if working would be detrimental to her health.

The defendant testified that shortly before his marriage, his wife's father had asked if the defendant wanted a job—"and he brung [sic] me a form to fill out, filled it out and sent it back in." Defendant got the job. Defendant earned about $1,200 per month while he was employed at Amax Lead Mines. Inferably, the defendant received some preferential treatment because the plaintiff's father was acquainted there.

The defendant did not like the work at Amax Lead Mines. He left that employment voluntarily "[b]ecause of health reasons and I didn't like [the] job." He testified, and the trial court could have found, that his refusal to continue working at Amax Lead Mines was one of the events which precipitated the dissolution. Defendant's employment was "[j]ust labor work." The defendant had worked helping his father in the timber business, but had no other work experience.

■ This recitation of the evidence illustrates the evidentiary void in which the trial court was left. Neither the trial court nor this court possesses any inherent knowledge of the nature of inflammatory joint disease; we know that it is painful, sometimes disabling. We also know that such disease is subject to palliation and occasional periods of complete remission. We cannot say, with any degree of confidence, whether the plaintiff is capable of becoming self-supporting or not. It is the policy of the courts to encourage and aid a spouse in becoming self-sufficient by education or training. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983). It is also the policy of the Congress to encourage attempts at rehabilitation. *Harrison*, supra, 657 S.W.2d at 370. The spouse seeking support has a duty to present evidence sufficient to allow the trial court to make a realistic appraisal of future events. The only suggestion advanced, even by implication, in plaintiff's behalf, is that defendant might return to his employment at Amax. However, it is well settled that a court of law may not compel a person to continue in any particular employment. *In re Marriage of Smith*, 652 S.W.2d 743, 744[3] (Mo.App.1983).

■ The ability of the defendant to work and earn does not appear with any reasonable degree of certainty. He is about 22 years of age, in good health, but

has very limited work experience. Even taking plaintiff's testimony at face value, it is still undesirable to burden the defendant with a liability which is insupportable. See *Harrison,* supra, 657 S.W.2d at 371–72. An award of maintenance of the order for which the plaintiff contends—$635 per month—would be unrealistic to the point of being illusory, but it is made to appear that the plaintiff is in need of some rehabilitative maintenance, at least. Realizing that the trial court had very little basis for the award of any amount as maintenance, we conclude the law was misapplied in holding she was entitled to none whatever. In this connection, we note that an award of attorney's fees is separate from and should not be considered as maintenance. *Dyche v. Dyche,* 570 S.W.2d 293, 296[4] (Mo. banc 1978); *Potter v. Desloge,* 625 S.W.2d 927, 929–30 (Mo.App.1981).

That part of the judgment denying all maintenance to the plaintiff is reversed and remanded. The trial court may hear such other and further evidence as it considers relevant on this issue only. It is so ordered.

CROW, P.J., and MAUS, GREENE and PREWITT, JJ., concur.