**In re the Marriage of Denis A. ZAVADIL, Petitioner–Appellant,**

v.

**Charlene Francis Zavadil, Respondent–Respondent.**

No. 57244.

Missouri Court of Appeals, Eastern District, Division Three.

April 2, 1991.

David Solomon Fischer, St. Louis, for petitioner-appellant.

Terrence Finan Moffitt, St. Louis, for respondent-respondent.

STEPHAN, Judge.

Denis A. Zavadil ("Father") and Charlene Francis Zavadil ("Mother") were married on January 7, 1983. One child, Christopher Joseph Zavadil, was born of their marriage on May 18, 1985. Although both parties continued to reside in the marital home until April 5, 1987, they ceased living together as husband and wife on January 30, 1987. Father filed a Petition for Dissolution of Marriage on March 31, 1987, alleging an irretrievable breakdown of the parties' marriage. Husband requested: (1) dissolution of the parties' marriage; (2) custody of Christopher; (3) maintenance; (4) child support; (5) attorney's fees; (6) court costs; and (7) an equitable division of the marital property.

On April 7, 1987, Mother filed her Answers and Cross–Petition for Dissolution of Marriage. She similarly alleged that the parties' marriage was irretrievably broken. Wife requested: (1) all marital property; (2) maintenance; (3) child support; (4) attorney's fees; (5) costs of the proceedings; and (6) custody of Christopher.

Following a four day hearing, the trial court entered its Findings of Fact, Conclusions of Law, and Decree of Dissolution on July 26, 1989. In its Findings of Fact and Conclusions of Law, the trial court ordered that: (1) Christopher's best interests will be served by having his primary custody placed with Mother; (2) Father should be granted reasonable custody and visitation with Christopher, including alternate weekends, alternate holidays, and four weeks of continuous temporary custody and visitation during the summer school vacation; (3) Father shall pay Mother $200.00 per month for periodic maintenance; (4) Father shall pay Mother $600.00 per month for child support; (5) Father shall provide for Christopher both medical and dental insurance, and should pay any expenses not covered by said insurance; and (6) Father shall pay $8,000.00 to Mother's trial attorney for fees incurred in the present litigation. Additionally, the trial court ordered a division of the marital property.

Father appeals from this judgment. He challenges: (1) the propriety of the award of custody of Christopher to Mother; (2) the award of child support concurrent with that custody; (3) the necessity of awarding maintenance to Mother; and (4) the award

requiring Father to pay Mother's attorney's fees. We affirm.

In his first point on appeal, Father alleges that the trial court erred in awarding the custody of Christopher to Mother because Christopher's best interests would be served by awarding his custody to Father or, alternatively, to both Father and Mother. Father argues that the award of custody of Christopher to Mother was improper because: (1) the trial court specifically found that Mother has alienated the child from Father; (2) Mother's interaction with Christopher exacerbated Christopher's problems adjusting to the divorce; and (3) Mother's alcohol abuse and careless smoking fail to provide a safe, stable and healthy home environment for Christopher. Father further argues that his home would be more stable and nurturing to Christopher, and thus would be the best environment for him.

 Review of this court tried case is governed by Rule 73.01 and the well known principles presented in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the decision of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32; *O'Leary v. Stevenson*, 782 S.W.2d 109, 111 (Mo.App.1989). Moreover, the determination of the trial court in regard to child custody cases is granted greater deference than in other types of cases. *Hart v. Hart*, 766 S.W.2d 131, 132 (Mo.App. 1989). There are no inflexible or precise set of formulas to apply when determining what the outcome of a custody case should be. *O'Leary v. Stevenson, supra*, 782 S.W.2d at 111. Rather, each case must be examined on its own peculiar set of facts and circumstances. *Id.* Although we have the authority to reverse the custody award if it is not in the child's best interests, that authority will be exercised with caution and only with a firm belief that the decree is wrong. *Kean v. Kean*, 754 S.W.2d 922, 923 (Mo.App.1988).

 At the outset, we note that neither Mother nor Father is an exemplary parent.

The testimony at trial indicated that Father inflicted cruel, rude and disrespectful physical and emotional mistreatment upon Mother. Mother testified that Father struck her on a number of occasions. On three or four occasions, Father struck Mother in front of Christopher. On at least one occasion Mother summoned the police to the couple's house because she was afraid Father was going to hurt her. Additionally, Mother testified that Father belittled her in front of other people by calling her dirty names. Mother also testified that Father touched her in places that he should not have been touching her in front of other people. Mother's testimony was supported by one of Mother's co-workers. One co-worker testified that Father would put down Mother about her job in the presence of friends, and would use foul and abusive language toward Mother.

The record further indicates that Father engaged in a pattern of alcohol and drug abuse. Mother testified that Father drank to excess. On one occasion Father went over to a friend's house where the two began drinking. Father's friend, after both he and Father had ingested alcohol, drove Father and Christopher home.

Mother also testified that Father used both marijuana and cocaine. On one occasion, while Christopher was under Father's care, Mother came home to find Father in an incoherent state on the living room floor. After checking on Christopher, Mother noticed that there was cocaine on the kitchen counter.

Since as early as January, 1987, Husband engaged in an extra-marital affair with Terry Kearney. During this relationship, Husband engaged in illicit sexual intercourse with Kearney. Husband has publically acknowledged that he sired an illegitimate child, Samantha Zavadil, as a result of said sexual relationship. Husband testified that he shares a bedroom with Kearney, and that Christopher is aware of this arrangement. Husband further testified that he could have resided in his guest bedroom while enjoying temporary custody of Christopher, but he has chosen not to do so. Both Mother and Father also testified

**510**

that Husband violated the trial court's April 20, 1987 order relative to child support and attorney's fees while providing for his needs, Kearney's needs, and the needs of Father's illegitimate child.

We additionally note, before trial, Father taped telephone conversations of Father and Mother. In one such conversation, Father denied that Samantha Zavadil was his child. Father's credibility and candor to the court was therefore successfully challenged.

Mother's behavior is also troublesome. Father testified that Mother was a heavy drinker and was out three or four nights a week on a regular basis. Father's testimony was supported by that of other witnesses. Christopher's licensed professional counselor testified that Christopher repeatedly expressed concern about his mother's alcohol consumption. The counselor also testified that Christopher told her that he was unable to wake Mother after she had fallen asleep when drinking. The counselor became so concerned that she reported Christopher's remarks to the Division of Family Services, a state agency that handles child abuse and neglect cases. A social worker visited the home so as to confirm or deny said allegations. She, however, found no indication that Christopher had been abused or neglected.

The testimony at trial indicated that Mother may drink and drive on occasion. On May 14, 1984, Mother pled guilty to a drinking related offense in Colorado. Additionally, the director at Christopher's daycare center testified that at times Mother: (1) was very unstable walking; (2) talked extremely loudly; and (3) was disoriented. Said director cautioned her staff not to release a child to someone who the staff member felt was inebriated or was unable to safely drive the child home.

There was also testimony that Mother used both nonprescription drugs and drugs that are not commercially sold. Husband testified that Mother was using nonprescription diet pills, caffeine pills, speeders, and other drugs. On one occasion, Christopher arrived at his daycare center with diet pills in his bag. The daycare center

called the poison control center so as to protect Christopher and the other children from a poison situation.

Additionally, Mother was accused of excessive and careless smoking during the trial. Father testified that Mother was a very heavy smoker. He stated that Mother would leave more than two cigarettes burning around the house. Father testified that on one occasion Mother set the marital bed on fire while smoking in bed.

Father's testimony was somewhat supported by a letter from the landlord of their residence. The landlord deducted $40.00 from the couple's rental deposit for cigarette burn marks on the kitchen floor.

Mother admitted to engaging in social relationships with other men during the parties' marriage. She had sexual intercourse with a co-worker during the summer of 1986. She also had an ongoing sexual relationship with a vice-president at the bank where she works. Mother discussed marrying this man.

While the paragraphs above clearly indicate that neither Father nor Mother is an ideal parent, the trial court was left with the decision of which household would serve Christopher's best interests. The trial court, having considered all the factors set forth in Section 452.375 RSMo (1988), determined that Christopher's best interests would be served by having his primary custody with Mother. We are unable to conclude that there is no substantial evidence to support the trial court's decision, that said decision is against the weight of the evidence, or that the trial court erroneously declared or applied the law. Primary custody will therefore remain with Mother.

Although Mother may not be an exemplary parent, one clinical psychologist, that Christopher saw, indicated that Mother was a competent, caring, attentive and appropriately protective parent. Moreover, the social worker from the Department of Family Services found no evidence of abuse or neglect. The social worker interviewed Christopher and concluded that Father and Kearney coached Christopher about Mother's smoking and drinking.

Mother's co-workers praised Mother, both as a worker and as a parent. The assistant cashier personnel officer at the bank at which Mother worked reported that Mother is "well organized, mature, conscientious, and responsible. She works well independently and can be counted on to get a job well done. She is also very ambitious, more attentive to detail, knowledge of the system. She will be an outstanding asset to the loan area." The assistant cashier personnel officer also indicated that Mother has very good work attendance. Other comments included Mother: (1) "has [the] potential to be a top notch employee"; (2) "requires little supervision, is exact and precise most of the time"; (3) is "usually quick to understand and learn"; (4) is "definitely above average"; and (5) is "an excellent mother. She spends a lot of time with her child." Another bank officer testified that Mother is "very dependable and very capable."

As with most divorces, Mother's behavior is contested. Mother testified that she has not become so intoxicated since Christopher's birth that she could not operate a vehicle. Additionally, she testified that she does not use any drugs. Mother also testified that she never burned the parties' marital bed while smoking in bed. The trial court is in the best position to resolve these disputes and there is nothing in the record to indicate that the trial court incorrectly reached its determination.

Finally, we note that the trial court did not err in declining to grant joint legal custody. Christopher's licensed professional counselor stated that she did not feel joint legal custody was in Christopher's best interests. Additionally, the clinical psychologist that Mother took Christopher to see testified that Christopher was suffering from an adjustment disorder as a result of continually moving back and forth between his parent's homes.

We have considered all of Father's contentions with regard to who should be awarded custody of Christopher. The trial court's determination is supported by substantial evidence. Father's first point is therefore denied.

Father's second point on appeal is that the trial court erred in ordering him to pay $600.00 a month in child support. Father argues that this determination is against the weight of the evidence and does not take into account the Missouri Child Support Guidelines, as well as Father's other financial obligations.

The determination of the amount of child support awarded pursuant to a dissolution of marriage rests within the sound discretion of the trial court. *Coit v. Coit,* 778 S.W.2d 344, 346 (Mo.App.1989). Appellate courts review the amount of child support awarded only to determine if there has been an abuse of discretion or erroneous application of the law. *Id.* The appellant has the burden of demonstrating error and the incorrectness of the trial court's judgment. *Id.* Although the Missouri Child Support Guidelines have been accorded substantial consideration in determining and reviewing child support awards, such guidelines are not to be automatically or rigidly applied. *Id.* at 347. The guidelines are simply formulas or schedules to consider. *Id.* They leave significant room for sound discretion. *Id.* Moreover, a party's testimony as to children's expenses is sufficient evidence on which to base an allowance of child support. *Id.* at 346. Such testimony need not be proved with absolute particularity. *Id.* The trial court, at its option, may accept or reject such evidence. *Id.*

In Mother's Statement of Income and Expenses, Mother stipulated that Christopher's living expenses are as follows: (1) $125.00 per month for food; (2) $75.00 per month for clothing; (3) $10.00 per month for medical care, dental care and prescription or over-the-counter drugs; and (4) $50.00 per month for recreation. These expenses total $260.00. Mother additionally stipulated that she spends $324.00 per month for Christopher's day care. Thus, Christopher's total living expenses are $584.00 per month. The trial court's award of $600.00 is almost identical to Mother's calculations. Since a party's testimony as to expenses is sufficient evidence on which

to base a child support award, the trial court's determination was not erroneous.

Moreover, there is sufficient evidence from which the trial court could determine that Father is able to pay said sum. Father's Statement of Income and Expenses indicates that he has a net take home pay of $2,213.47 a month. Said monthly income is sufficient to cover $600.00 for child support. This conclusion is additionally supported by Father's 1988 Federal Income Tax Return. On said return, Father claimed a gross annual income of $39,-457.00, slightly more than the $39,000.00 he declared in his Statement of Income and Expenses.

The trial court neither abused its discretion nor erroneously applied the law. Thus, Father's second point is denied.

Father's third point on appeal is that the trial court erred in awarding maintenance and attorney's fees to wife. Father argues said awards were not supported by the weight of the evidence. Specifically, Father contends in his point that: (1) Mother has the financial resources to meet her needs and is able to support herself through appropriate employment; (2) the marriage was of a short duration; (3) Mother's conduct during the parties' marriage does not entitle her to maintenance; and (4) the trial court did not consider Father's ability to pay his other financial obligations. Since Father's argument only addresses his first and fourth contentions, we similarly will address only those contentions actually argued.

Trial courts are vested with considerable discretion in granting maintenance orders. *In re Marriage of Reed*, 762 S.W.2d 78, 85 (Mo.App.1988). We review an award of maintenance only for an abuse of discretion. *Cooper v. Cooper*, 778 S.W.2d 694, 697 (Mo.App.1989). A dissolution decree awarding maintenance will be affirmed unless the award is against the weight of the evidence or erroneously declares the law. *Id.* The burden is on the party challenging an award of maintenance to show the award was an abuse of discretion. *Id.* Unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the spouse who pays, interference by this Court is not warranted. *King v. King*, 762 S.W.2d 544, 546 (Mo.App.1989).

Father argues that the trial court erred in awarding Mother maintenance because she is able to support herself through appropriate employment. A spouse who seeks maintenance must demonstrate need. *Williams v. Williams*, 753 S.W.2d 101, 102 (Mo.App.1988). A spouse who seeks maintenance must show that he or she lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment. *Id.* On Mother's Statement of Income and Expenses, Mother indicates that her net take home pay is $921.06 a month. She indicates that her individual living expenses alone total $1,600.00. Therefore, Mother's monthly expenses exceed her income by $688.94.

The court awarded wife $200.00 a month to cover this discrepancy. An award of maintenance is aimed at closing the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses. *Id.* Father's contention that wife could obtain other, more appropriate employment, is pure speculation and is nowhere supported by the record. Moreover, since a gross and permanent disparity between the parties' capacity to work and earn is a sound reason for an award of maintenance, the trial court did not err in awarding Mother maintenance. *In re Marriage of Quintard*, 735 S.W.2d 388, 390 (Mo.App.1987).

The trial court similarly did not err in awarding attorney's fees. Section 452.-355, RSMo Supp. 1988, governs awarding attorney's fees. A trial court, after considering all relevant factors, including the financial resources of both parties, has considerable discretion in awarding attorney's fees. *In re Marriage of Gore*, 781 S.W.2d 828, 832 (Mo.App.1989). We will only overturn an award when the trial court has abused the broad discretion with which it's invested. *Id.*

Mother testified that she had no money with which to pay her attorney. As

of the last day of trial, Mother's attorney's fees were $16,037.32. Mother's trial attorney estimated that his total fees after post-trial matters would be $18,287.32. Of that amount, Mother paid $2,834.00. The trial court award, which granted Mother $8,000.00, was less than half the total charged by Mother's attorney. It does not come close to covering her attorney's fees. The trial court did not abuse its discretion in making this award.

■ While the trial court did not abuse its discretion in ordering Father to pay part of Mother's attorney's fees, the trial court did err when it stated: "this award is intended to serve as a form of maintenance." An award of attorney's fees is separate from and should not be considered as maintenance. *In re Marriage of Jadwin*, 671 S.W.2d 9, 12 (Mo.App.1984). Rule 84.14 permits the appellate court to award or give judgment as the trial court ought to have given. *Steinmeyer v. Steinmeyer*, 669 S.W.2d 65, 68 (Mo.App.1984). Therefore, we order Father to directly pay Mother's trial attorney, W. Morris Taylor, P.C., the $8,000.00 trial award for attorney's fees.

For the reasons stated, we affirm.

REINHARD, P.J., and CRANE, J., concur.