Beverly Jo CARPENTER, Appellant,

v.

Kenneth M. CARPENTER, Respondent.

No. 69610.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 3, 1996.

James D. Bass, Blumenfeld, Kaplan & Sandweiss, P.C., Clayton, for appellant.

Kenneth M. Carpenter, pro se.

GARY M. GAERTNER, Judge.

Appellant, Beverly Jo Carpenter ("wife"), appeals the judgment entered by the Circuit Court of the County of St. Louis dissolving her marriage to respondent, Kenneth M. Carpenter ("husband"), and awarding him spousal maintenance. We affirm the dissolution and reverse the award of maintenance.

The parties were married on March 19, 1983, in St. Louis.[1] At the time, both husband and wife were employed. Prior to the marriage, husband suffered a back injury which, according to husband, had prevented him from working for three years. Immediately after their marriage, the parties moved to Texas in connection with husband's current employment. Both husband and wife continued to work and contribute their income toward household expenses for approximately one and one-half years. However, in November of 1984, husband suffered another work-related injury to his back which left him unemployed. Husband began receiving workers' compensation payments for his injury; these payments were contributed to the household income for a time.

The parties moved back to St. Louis in July of 1985.[2] After returning from Texas, husband would only sporadically contribute his disability payments toward household expenses. After being released from all work restrictions and after his disability payments ended in early 1987, husband remained unemployed for another year and a half. Although he received rehabilitative training as a pharmacy technician, he never obtained employment in that field.

Husband's refusal to find employment began causing marital problems in 1987 and 1988. Husband remained unemployed until late 1988 or early 1989. He then worked sporadically until late 1990. During these years, husband spent a majority of his time camping and fishing at Mark Twain Lake. During the summer months, this preoccupation would keep him from even sporadic employment. When husband did work, he rarely contributed his earnings to the parties' joint account.[3] Meanwhile, wife worked two jobs for an average of sixty hours a week in order to meet family expenses.

When the parties had to sell their boat and camper in late 1990 due to financial difficulties, husband returned to full-time employment. Husband performed manual labor for Moeller–Reimer, requiring him to lift and carry from thirty to one hundred pounds at a time. He was able to perform the work without regard to his prior back injuries. However, after remaining at this job for seven months, husband sustained an injury to his left leg in May 1991. Husband received disability payments until the end of 1992 for this injury. Again, husband only contributed portions of these payments to the household account on a sporadic basis. When wife would question husband about the payments and where they were going, husband asserted the payments were "my money," as opposed to his and wife's joint money, and refused to give her any further explanation.

Husband spent "his money" on his personal hobbies and recreational activities. After the boat had been sold, he began building and collecting radio-controlled model airplanes which could cost in excess of $1,000.00 apiece. In late 1994, husband received a $35,000.00 lump sum workers' compensation settlement for his 1991 leg injury. He deposited the payment into a joint account in his and a friend's name. At trial, husband could not account for the majority of the $35,000.00 or where it was spent.[4] Only

---

1. Wife was 28 years old and husband was 33 years old when the parties married. This was wife's second marriage and husband's third.

2. At trial wife testified she and husband were having marital problems at this time, and she wanted to return to St. Louis. Husband convinced her to stay in the marriage and agreed to move back to St. Louis.

3. Husband had also received a $25,000.00 lump sum workers' compensation settlement for the back injury he sustained in Texas. He opened his own individual account with the funds, and though he used some of them to buy household furnishings and groceries, wife did not know—nor could husband say—where the majority of the money was spent.

4. When questioned about both the workers' compensation payments and settlement payments at trial, husband repeatedly answered either he could not recall or he did not know whether the

$129.00 remained in the account at the time of trial in September 1995.

Husband refused to seek employment from May of 1991 up until the date of trial. He rejected an offer of full-time employment in the home remodeling business. He repeatedly asserted his physical disabilities precluded his becoming gainfully employed.[5] However, despite husband's alleged infirmities, he was able to participate in a wide variety of physical endeavors: He helped remodel several friends' and relatives' homes, which involved construction, carpentry, plumbing, electrical work, and painting; he was able to work for his friend, Don Ware, for several months in 1994 performing various construction activities for full work days for $12.00/hour; he was able to help wife repair their home's flooded basement in June 1995, which involved knocking down a brick wall and carting the bricks away, using a jackhammer to remove buried concrete, and carting in loads of fill dirt; and he was able to volunteer as Field Marshal for his model-airplane flying club, which required long hours of physical exertion mowing and clearing the fifteen acre field, laying and grading a gravel road, building a pavilion, and cutting down a large tree. Videotapes showing husband at work at the air field were shown at trial and admitted into evidence. Witnesses testified the time husband devoted to maintaining the air field was equivalent to that of a full-time job.

Husband averred he could not work due to injuries sustained to his back, right arm, and left and right legs. He eventually admitted his right leg was not injured. Witnesses testified they had never heard husband mention nor had they seen husband display any problems with his right arm. Further, though husband claimed he could only drive a manual transmission by using his crutch to depress the clutch due to his bad left leg, a witness testified husband would mow the fifteen acre air field on the club's manual transmission tractor with no trouble and without a crutch. Other evidence also refuted this alleged injury. Although husband stated his legs had given out on him on forty to fifty various occasions in the past, no one had ever witnessed this happen. Lastly, husband's alleged back injuries did not prevent him from lifting and carrying from thirty to one hundred pounds at Moeller–Reimer, nor did it keep him from other forms of physical labor as detailed above.

At trial, husband asserted he was totally disabled and incapable of supporting himself, and requested maintenance. Husband was living with his sister in Fort Dodge, Iowa. He was not paying rent, though he testified he had ongoing expenses of "food, clothing, gas, regular things." He had paid two utility bills since moving to Iowa. The only evidence of husband's projected expenses came by way of the following testimony:

[Husband's Counsel]: Okay. Now, are your expenses, your present expenses the same as the expenses you had while you lived with [wife]?

[Husband]: Well, actually they're going to be more.

[Husband's Counsel]: But right now you don't pay nearly each month what you used to pay when you lived with [wife]; is that correct?

[Husband]: No.

[Husband's Counsel]: That's because you're living with family at this time?

[Husband]: Yes, it is.

[Husband's Counsel]: Are you able to support yourself at this time?

[Husband]: No, I'm not.

[Husband's Counsel]: Are you asking the Court to award maintenance from your wife payable to you?

[Husband]: Yes, I am.

Husband did not testify to any dollar amounts, nor did he offer a statement of income and expenses into evidence at trial.

---

funds were deposited in the parties' joint account or where and how the funds were spent.

5. Wife testified that, after a healing period following surgery on husband's injured leg, husband was "back to doing everything he wanted to do." Wife stated she observed no limitations on husband's physical abilities.

The trial court, in its judgment and order dissolving the marriage, made the following findings pertinent to this appeal:

6. Husband is currently unemployed and received a Workers [sic] Compensation disability and multiple lump-sum Worker's Compensation payments. However the Court did not find credible Husband's testimony that he could not find or maintain employment due to his disability. The Court finds that Husband has voluntarily failed to seek and obtain employment though he is an intelligent, competent, and able bodied person, capable of contributing to his support. Though Husband can contribute to his support, at this time, that employment may not be sufficient to provide for his total reasonable needs and therefore currently needs support from Wife. The Court finds that Wife has the ability to provide partial support for Husband as she has done throughout the marriage.

The trial court ordered wife to pay to husband $675 per month as and for periodic maintenance. The court gave wife the option of paying $426 of that amount toward the loan securing the purchase of the parties' 1993 Econoline van. The van was awarded to husband in the division of marital property but was secured by a loan in wife's name alone. The court also allowed wife to deduct any insurance payments made on the van if the loan required such insurance be maintained, at least until husband provided proof he was maintaining insurance on the vehicle.[6] The court divided the parties' marital property and awarded each his or her separate property. Wife's post-trial motions were denied, and she filed her appeal with this court.

On appeal, wife's only allegation of error concerns the trial court's award of maintenance to husband. Wife contends the maintenance award was an abuse of discretion or, in the alternative, contends the trial court erred in determining the amount and duration of the maintenance award.

■ Generally, the trial court exercises substantial discretion in awarding maintenance to a spouse. *Zlatic v. Zlatic*, 910 S.W.2d 818, 821 (Mo.App. E.D.1995). The party challenging the maintenance award bears the burden of showing such award was an abuse of discretion. *In re Marriage of Zavadil*, 806 S.W.2d 506, 512 (Mo.App. E.D. 1991). In deciding maintenance is warranted, the trial court must find (1) the spouse seeking the award lacks sufficient property, including marital property awarded to him or her, to provide for the spouse's reasonable needs, and (2) the spouse seeking maintenance is unable to support him or herself through appropriate employment. *L.A.L. v. L.L.*, 904 S.W.2d 50, 53 (Mo.App. E.D.1995); RSMo § 452.335.1 (1994). The spouse requesting maintenance must show need before maintenance may be awarded. *Roberts v. Roberts*, 810 S.W.2d 65, 66 (Mo.App. W.D. 1990). "It is an abuse of the trial court's discretion to award maintenance to a spouse who has not shown the requisite need for support." *Id.* Here, husband failed to show he needed support from wife in order to meet his reasonable needs. At trial, husband was and had been living with his sister in Fort Dodge, Iowa. He testified he did not pay rent. He stated he had paid two utility bills since his move there. The only other testimony regarding husband's expenses referred to "ongoing expenses" of "food, clothing, gas, regular things." Husband never placed a monetary value on any of the items mentioned. Moreover, husband's bare statement it would cost him more to live alone than it did to live with wife was conclusory and wholly unsubstantiated. Husband's Statement of Income and Expenses was never offered or admitted into evidence, nor did the trial court take judicial notice of it. "A mere request for maintenance is insufficient to support a maintenance award." *Chapman v. Chapman*, 871 S.W.2d 123, 126 (Mo.App. E.D.1994). Rather, awards of maintenance must be made within a reasonable tolerance of proof. *In re Marriage of Randle*, 762 S.W.2d 494, 495 (Mo.App. W.D.1988). Husband's scant testimony concerning his expenses, without more, is insufficient evidence on which to base an award of maintenance.

■ The lack of evidence concerning husband's reasonable needs is further demon-

---

**6.** Husband testified he thought the insurance cost $245.00 every six months.

strated by the trial court's own findings. The trial court hedged "that employment *may not be sufficient* to provide for [husband's] total reasonable needs and therefore [he] currently needs support from Wife." (emphasis ours). As a result, the court ordered wife to pay husband $675 per month, which it calculated as twenty percent of wife's income. "An award of maintenance is aimed at closing the gap between the income of the spouse who seeks maintenance and that spouse's monthly expenses." *Zavadil,* 806 S.W.2d at 512. Here, there was no evidence of a gap between what husband earned or could earn and what expenses he would incur.

■ Even had husband shown what his monthly expenses were, husband failed to show he could not support himself through appropriate employment. We note that though husband was unemployed at trial, the trial court found—and the evidence overwhelmingly supports—husband "voluntarily failed to seek and obtain employment...." [7] Unemployment or the mere inability to get a job does not require an award of maintenance. *Kovacs v. Kovacs,* 869 S.W.2d 789, 794 (Mo.App. W.D.1994). Moreover, the trial court found not credible husband's testimony that he was unable to work due to his multiple injuries. "Justice does not require provision of support to a spouse who is or may be prepared to become self-supporting." *Id.* at 793–94. The evidence at trial showed husband was a skilled craftsman who was capable of earning up to $12.00 an hour in the construction business as recently as a year before the trial. This wage is comparable to earning a $23,000 a year salary, which is more than enough to meet the monthly expenses attested to by husband at trial.

Because husband failed to show the requisite need for maintenance within a reasonable tolerance of proof, and further failed to show he was unable to obtain employment, we find the trial court abused its discretion in ordering maintenance. Accordingly, the trial court's award of maintenance is reversed,

and the judgment is affirmed in all other respects.

DOWD, P.J., and REINHARD, J., concur.

7. This sort of conduct often results in the trial court's imputing income to the purposely unemployed spouse. *See Jensen v. Jensen,* 877 S.W.2d 131, 136 (Mo.App. E.D.1994) (noting imputing income to spouse proper where unemployed spouse fails to use good faith to obtain new employment or rejects offers of employment received).