Joyce DEMENT and Lloyd Dement, Appellants,

v.

The CITY OF BONNE TERRE, a municipal corporation, Respondent.

No. 47085.

Missouri Court of Appeals, Eastern District, Division Three.

April 17, 1984.

Robert G. Kister, Festus, for appellants.

Charles G. Hyler, Farmington, for respondent.

REINHARD, Judge.

Plaintiffs instituted suit against defendant City for injuries sustained by plaintiff Joyce Dement as a result of a fall due to the dangerous condition of defendant City's sidewalk and curbing. The evidence revealed that plaintiff Joyce Dement suffered serious injury as a result of this fall. Plaintiffs appeal after the jury returned a verdict in favor of defendant city.

Plaintiff Joyce Dement was the principal witness at trial. Other witnesses included several people who came to her assistance shortly after the accident occurred. At the time of the accident, plaintiff Joyce Dement had been visiting her aunt's home in the City of Bonne Terre. Sometime during the evening of April 24, 1980, she left her aunt's. house and walked along the sidewalk toward her automobile. According to her testimony, as she stepped off the sidewalk she caught her foot in the broken concrete curbing, causing her to fall into the street. She was unable to get up and called for help until plaintiff's aunt and others arrived. They carried her into the aunt's house, contacted her husband, and then transported her to Mineral Area Osteopathic Hospital, which was not the closest hospital but was the one with which the aunt was most familiar.

Several witnesses corroborated plaintiff Joyce Dement's testimony regarding the jagged condition of the broken curbing and the general location of her fall. However, there was somewhat varying testimony concerning the lighting conditions at the time of the accident. Plaintiff Joyce Dement testified it occurred between 9:00 and 9:30; it was dark and there were no street lights in the immediate vicinity. Her aunt confirmed that the accident took place between 9:00 and 9:30. Witness James Vickery testified that when he arrived at the house of his girlfriend, Debbie Pinkston, which was located directly across the street from the scene of the accident, "it was just getting dark ... so probably around 8:00." Witness Debbie Pinkston testified that she was uncertain as to the time of the accident, but that it was dark—so dark that from her vantage point she was unable to discern whether plaintiff was a man or a woman. The hospital records entered into

evidence and shown to the jury indicate that plaintiff was admitted to the hospital at 9:55 p.m.

Plaintiffs' allegation of error on the part of the trial court concerns the testimony of plaintiffs' witness, Kevin Pinkston, brother of Debbie Pinkston. This witness lived across the street from the scene of the accident. Upon hearing plaintiff Joyce Dement's cries for help, he immediately went to her assistance and aided in carrying her into the house. When asked on direct examination what time the accident occurred, he answered "it was about—the sun was just setting. It was about 7:30 or so." Both at the time of this testimony and the next morning, plaintiffs' counsel attempted to either refresh the memory of this witness or to impeach him with his statement to police of defendant City, given some twenty minutes after the accident. Counsel was aware of the statement before Pinkston testified, but had not gone over it with him. In that statement Pinkston said that the accident occurred about 9:00 p.m. Defense counsel objected, contending that plaintiffs were attempting to impeach their own witness. On that basis, the court sustained the objection; plaintiffs were not permitted to pursue the matter further.

The following morning, however, plaintiffs made an offer of proof outside the presence of the jury. In the offer of proof, Kevin Pinkston stated that he thought "it was about 7:30 ... because it wasn't dark yet, just dusky dark ... [I]t was getting dark, but you could still see." He further stated that he gave a statement to James Camden, a police officer of defendant City about twenty minutes after the accident. Pinkston identified plaintiffs' exhibit No. 8 as his statement, indicating, in fact, that it was in his own handwriting. Pinkston then stated that the police statement did not refresh his recollection as to the time the accident actually occurred, but "it says there about 9:00, so I guess it was about 9:00." Plaintiffs' counsel then inquired what the witness would respond if again asked what time the accident occurred; Kevin Pinkston answered that he would say about 9:00. The court denied the offer

of proof. It is the court's ruling as to this statement made to defendant's officer which is the basis for plaintiffs' appeal.

Under the circumstances of this case, we find that the court erred in failing to allow plaintiffs to question witness Kevin Pinkston concerning his police statement and, if he denied having made it, to offer it into evidence.

▪ The general rule is that one cannot impeach his own witness since he is considered to have vouched for the witness' credibility. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d 574, 586 (Mo.App.1981); *State v. Cox,* 542 S.W.2d 40, 48 (Mo.App.1976). To warrant impeachment of one's own witness, therefore, there must be actual surprise at the testimony the witness gives, and even then it is appropriate only where the evidence is of such an affirmative character as to be favorable to the adverse party, and therefore prejudicial to the party who was misled into calling the witness. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d at 586; *Wiseman v. Missouri Pacific Railroad,* 575 S.W.2d 742, 750 (Mo.App.1978). In the present case, there was no reason for plaintiffs' counsel to believe that Kevin Pinkston's testimony as to the time of the accident would be contrary to that contained in his police statement. Therefore, we believe that Pinkston's testimony of an earlier time was a sufficient surprise to plaintiffs' counsel to make impeachment proper. *See Wiseman v. Missouri Pacific Railroad,* 575 S.W.2d at 751.

▪ To prevail, plaintiffs must prove prejudice as well as surprise. Here, defendant City both raised an affirmative defense and instructed the jury on contributory negligence, alleging that plaintiff Joyce Dement failed to keep a careful lookout. Therefore, one of the key issues in this case was whether or not plaintiff Joyce Dement was able to see the defect in the curbing. Visibility and time were significant factors, and defendant's strongest ar-

gument became plaintiff Joyce Dement's ability to see at the time of the accident.

Kevin Pinkston's testimony became a significant part of defendant's case, as demonstrated by closing argument. In closing argument, defense counsel read both the converse of plaintiffs' verdict director and the contributory negligence instruction to the jury. Defense counsel then summarized his position as follows:

It is our position that Mrs. Dement, when she was walking down that sidewalk and turned to walk into the street, that she should have seen what was in front of her and seeing it, she should not have tripped, or however she did it, and fell and broke her leg. It's that simple.

In support of its position that plaintiff Joyce Dement could see the curbing had she looked, defense counsel argued:

[E]very witness that testified, *except Mrs. Dement and her aunt*, testified that the accident took place between 7:30, 8:00 and 8:30. I think [the testimony] was 7:30, 8:30 and then the little girl [Debbie Pinkston] testified that she could see barely enough to see the body, the lady laying there, but she couldn't tell whether it was a man or woman. The other people, Mrs. Dement and the aunt testified it was between 9:00 and 9:30. Well, we have to think on common experiences. Mrs. Dement has something to gain in this lawsuit, or lose, as the case may be, and her aunt is certainly going to participate with her as far as trying to work with her in the facts of this case. That's human nature.

Defense counsel also noted that daylight savings time was in effect at the time of the accident. Thus, he concluded:

What's the lighting conditions at 7:30? What's the lighting conditions at 9:00? Is it completely dark? I don't think so. I don't think so. *I know it's not dark at 7:30 and I know it's not dark at 8:30 with daylight saving time.* She could see where she was going.

It is clear that the thrust of defendant's argument to the jury was that plaintiff Joyce Dement and her aunt were the only ones who testified that the accident occurred at 9:00 and 9:30 p.m.; that the people who had nothing to gain in the case testified that it happened either at 7:30 or 8:30. The trial testimony of Kevin Pinkston represented the earliest of all times mentioned—a time at which plaintiff Joyce Dement should have been able to see. At the same time, the corroborating testimony of Kevin Pinkston consistent with his earlier statement would have significantly tempered defendant's argument to the jury.

Under the circumstances, we can reach no other conclusion than, in effect, Kevin Pinkston became a key defense witness. The court's erroneous ruling which deprived plaintiffs of this corroborating testimony cannot be said to have not been prejudicial.

Reversed and remanded.

KAROHL, P.J., and CRANDALL, J., concur.