**Carolyn B. JOHNSTON, Appellant,**

v.

**Robert L. JOHNSTON, Respondent.**

**No. WD 41409.**

Missouri Court of Appeals,
Western District.

Aug. 8, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Beverly Figg, Jefferson City, for appellant.

Michael Riley, Jefferson City, for respondent.

Before CLARK, P.J., and
LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Carolyn Johnston appeals the trial court's order dividing the marital property in a dissolution action. She alleges that the trial court did not properly value her husband's dental practice and that trial court erred in finding a $20,000 note given by the parties to the husband's mother to be a marital debt.

The parties were married August 16, 1969, and separated November 10, 1987. During the marriage Carolyn worked full time teaching school and working summers for the IRS while Robert attended dental school. Carolyn was certified to teach German and Home Economics at the high school level.

In 1973, Robert graduated from dental school and the family moved to Jefferson City where Robert began his dental practice. Robert has been a dentist for fifteen years and for ten of those years Carolyn served as his bookkeeper. Carolyn also worked as a substitute school teacher the first year they lived in Jefferson City. From 1982 to 1987 she took college courses enabling her to be certified as an elementary school teacher.

During 1987–88 school year appellant worked as a substitute teacher, earning about $35 to $45 per day. She also worked as a laundry attendant earning $3.50 per hour, and as a secretary and teaching assistant earning $6 per hour.

Two children were born of the marriage, Katherine, born November 1, 1974, and Charles, born February 27, 1979. The trial court awarded joint custody of the minors to Carolyn and Robert and awarded active physical custody to the appellant with specified visitation to respondent. The appellant does not appeal this portion of the order. Nor does appellant challenge the trial court's decision regarding the award of child support or maintenance. Carolyn objects to the trial court's division of the marital debts and property.

Initially we note that the trial court's decree will be affirmed, "[U]nless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or

unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should only exercise the power to set aside a decree or judgment on the ground that it is "'[A]gainst the weight of the evidence', with caution and with a firm belief that the decree or judgment is wrong." *Id.*

■ In determining sufficiency of the evidence, the appellate court shall accept as true the evidence and inferences drawn therefrom that are favorable to the trial court's judgment disregarding contrary evidence. *Morgan v. Morgan*, 701 S.W.2d 177, 179 (Mo.App.1985). A division of property by the trial court will not be disturbed absent a showing that it is improper or that it constitutes an abuse of the trial court's discretion. *Dardish v. Dardish*, 670 S.W.2d 865, 868 (Mo. banc 1984).

The trial court awarded appellant $440.50 child support per month per child, and maintenance for three years as follows: $500 per month for the first year, $400 per month for the second year and $300 per month for the third year. She was also awarded $3,000 toward her attorney fees.

The trial court divided the property as follows: marital property valued at $110,-939 was awarded appellant and she was ordered to assume debts of $69,728 leaving a net value of $41,211 to appellant. The respondent was awarded $139,609 and ordered to pay debts of $87,973. The net value of respondent's property was $42,-636. The trial court set off a $20,000 debt to respondent as evidenced by a demand note to respondent's mother. The purpose of the loan was a downpayment on Robert's and Carolyn's family residence.

■ The thrust of appellant's Point I is that the trial court erred by excluding the value of a covenant not to compete when determining the value of respondent's solo dental practice.

The appellant's allegation regarding a covenant not to compete raises a first impression scenario for our courts.

The writer has found fewer than five cases across the land specifically address-

ing this issue. In *Carr v. Carr*, 108 Idaho 684, 701 P.2d 304 (App.1985), the Idaho Court of Appeals held that the trial court could, in that community property state, order "Terry Carr to execute a reasonable noncompetition agreement, thereby including goodwill in the sale of the truck stop." *Id.* 701 P.2d at 309.

In *Dugan v. Dugan*, 92 N.J. 423, 457 A.2d 1, 8 (1982), the Supreme Court held that a significant element in determining goodwill for a law practice is that the attorney as a sole practitioner cannot sell his practice and that a restrictive covenant is not available under these conditions. The court reasoned that lawyers' clients were not chattels or merchandise and hence, goodwill could not be sold. The court noted that this was the underlying basis for proscribing a restrictive covenant.

The New Mexico Supreme Court in *Lucas v. Lucas*, 95 N.M. 283, 621 P.2d 500 (1980), held:

> Appellant's covenant was not a community asset as the forthcoming payments were not included in the valuation of the stock and were to be received after divorce. The community had ceased to exist and therefore had no interest in the covenant. Upon the lawful dissolution of marriage, the right to compete becomes a personal right and, therefore, the separate property of the owner, who may then relinquish or exercise that right to his or her own benefit.

The circumstances attending the sale of Ballard leads this Court to believe that this case must be distinguished from our recent opinion in *Hurley v. Hurley*, 19 N.M.St.B.Bull. 573, 94 N.M. 641, 615 P.2d 256 (1980). In *Hurley*, we stated that good will can and does exist in a professional practice even though founded upon the personal skill and reputation of an individual and that this good will should be accounted for in the valuation of the practice as a business at the dissolution of the community. While it might be argued that what appellant actually sold under the covenant not to compete was the good will attributable to him in the business, we do not agree.

Each shareholder in the corporation was given the opportunity to independently assess the value of his holding. The price quoted by SCI was conditioned on all stock being sold. All shareholders must have been satisfied that the price adequately compensated them for their investment in Ballard assets and good will. The amount received by the shareholders which exceeded the actual value of the assets can only be attributed to the business good will.

Under these particular facts we cannot see how we can equate the covenant not to compete with good will. *Id.* at 501–02.

The Washington Supreme Court, en banc, *In re Marriage of Fleege*, 91 Wash.2d 324, 588 P.2d 1136 (1979), in reversing the trial court held husband's dental practice had a goodwill value that the trial court should have determined. "Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage.... Among the elements which engender goodwill are continuity of name, location, reputation for honest and fair dealing, and individual talent and ability." *Id.* 1138. (Citations omitted).

In *Hanson v. Hanson*, 738 S.W.2d 429, 434 (Mo. banc 1987), the court rejected both *Dugan* and *Fleege*, saying, "We find that the *Fleege* analysis is mired in the same mixture of personal reputation and entity reputation as found in *Dugan*."

The court in *Hanson* held that professional goodwill was a marital asset capable of being valued. The court did not specifically address the issue of a "covenant not to compete" in arriving at the "goodwill" doctrine. However, the court did hold that: "Professional goodwill may not be confused with future earning capacity. We have not declared future earning capacity to be marital property." *Id.* at 435.

*Hanson* left the trial court with broad discretion in appropriately dividing marital property and awarding any maintenance. *Id.*

Decided with *Hanson* was *Graham v. Graham*, 738 S.W.2d 429 (Mo. banc 1987),

wherein the court stated, "[W]e have recognized goodwill in a professional practice as property subject to division in a dissolution of marriage proceeding. We have also approved a limited means of proving and valuing that goodwill in a professional context." *Id.* For whatever reason including a covenant not to compete in the factoring of the "goodwill" nature of the property was not addressed in the scholarly work. Therefore, at this time it is not applicable as a factor in valuing goodwill.

*Hanson* indicates a preference for the "fair market value approach" in valuing goodwill. "The value of goodwill, if any, is determined by the price the practice would bring were it sold on the open, relevant market to a qualified professional.[1] *Hanson v. Hanson, supra,* 738 S.W.2d 435–36.

Under *Murphy v. Carron, supra,* 536 S.W.2d at 30, the trial court's valuation of the property is supported by the evidence and will not be disturbed. Appellant's Point I is denied.

Appellant, in Point II, alleges that the trial court erred in finding that the $20,000 owed to respondent's mother was a marital debt. During the marriage, the parties executed a $20,000 note and deed of trust to Rosemary Johnston, respondent's mother. The note provides for eight per cent interest to be paid monthly and that if default be made in paying the interest, both the principal and interest shall become due immediately. Default has been made in the interest payments and none of the principal has been paid. Respondent's mother has not demanded payment. Indeed, it was her feeling at the time the note was signed that the principal be paid back only if she needed the money.

The trial court is not obligated to allocate the marital debts but it is a commendable practice and serves to eliminate future dissention between the parties. *Brisco v. Brisco,* 713 S.W.2d 586, 592 (Mo. App.1986). Debts of the spouses are not marital property. However, the existence of the debt and who has the responsibility for paying the same is a factor the trial court should consider in a fair division of the marital property. *Oldfield v. Oldfield,* 688 S.W.2d 778, 781 (Mo.App.1985). In the instant case, the trial court correctly gave consideration to the debt in the division of the marital property.

Appellant does not deny that the debt was incurred. The parties received the $20,000 and it was used as a downpayment on the family home. Appellant suggests that the court should not have allocated the debt to respondent or that the debt should be discounted by some factor since it is possible respondent would be forgiven the debt in the future. This argument is not persuasive.

The division of property shows debts of $69,728 allocated to appellant and $87,973 to respondent. Even if the note is forgiven, respondent still owes $67,973. Furthermore, it must be remembered that this is a valid debt with the executed note and deed of trust as evidence of its validity. Given the facts and circumstances of the instant case it cannot be said that the trial court erred in allocating the debt to respondent. The judgment of the trial court is affirmed.

All concur.

---

1. Lawyers and judges alike are directed to *Hanson v. Hanson,* 738 S.W.2d 429, 435–37 (Mo. banc 1987), for a thorough discussion of determining valuation.