Donald R. VEHLEWALD, Appellant,

v.

Donna S. VEHLEWALD, Respondent.

No. 61865.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 18, 1993.

Robert E. Jones, St. Louis, for appellant.

J. Patrick Winning, David E. Woods, St. Louis, for respondent.

STEPHAN, Judge.

Donald R. Vehlewald ("Husband") appeals from the trial court's judgment which dissolved his marriage to Donna S. Vehlewald ("Wife"). We affirm.

Husband and Wife were married in August 1968. One child was born of their marriage, Lindsey Brooke Vehlewald ("Lindsey"), on April 21, 1982. The parties separated in the early part of 1991. Husband filed his Petition for Dissolution on March 8, 1991. Wife filed her Answer to Petition for Dissolution on April 12, 1991. On June 11, 1991, Wife filed a Cross–Petition for Legal Separation. On February 28, 1992, the trial court heard and denied Wife's Motion for Leave of Court to File an Amended Petition for Legal Separation.

After a hearing on March 20, 1992, the trial court granted Husband a Decree of Dissolution. That decree incorporated a stipulation whereby the parties agreed that the care, custody and control of Lindsey would be with Wife, subject to temporary custody and visitation rights in favor of Husband. The trial court ordered Husband to pay $1,700.00 per month as child support for Lindsey. The trial court, additionally, ordered Husband to provide and maintain medical, hospitalization and dental insurance on Lindsey. The trial court specified that any medical or dental expenses not covered by said insurance shall be paid fifty percent by each of the parties.

The trial court also ordered Husband to pay to Wife $870.00 per month as maintenance. The trial court, thereafter, divided the parties' marital property and debts. Finally, the trial court ordered Husband to pay Wife's attorney $6,000.00 as his fees, along with court costs.

On March 25, 1992, Husband filed a Motion for New Trial and/or to Amend Judgment. On April 6, 1992, the trial court denied Husband's Motion for New Trial, but it partially granted Husband's Motion to Amend Judgment. Specifically, the trial court ordered Wife to pay the existing debt to Twin Oaks Christian Academy, Lindsey's school, which was approximately $2,170.00. On April 21, 1992, Husband filed his Notice of Appeal.

Husband's first point is that the trial court erred in: (1) dividing marital property; (2) awarding Wife $1,700.00 monthly

child support; (3) awarding Wife's attorney $6,000.00 as and for attorney's fees; and (4) awarding Wife $870.00 monthly maintenance. Husband argues that these awards are an abuse of discretion in that Wife failed to plead or prove marital misconduct or such other statutory factors that would support these awards. We will address each award separately.

First, Husband argues that the trial court erred in awarding Wife fifty-four percent of the marital property together with a lesser share of the marital debt. The division of marital property is governed by § 452.330, RSMo.Cum.Supp. 1991. That statute requires a fair and equitable division of the marital property in light of the individual circumstances of each case, but does not require an equal division. *In re Marriage of Stuart*, 805 S.W.2d 309, 312 (Mo.App.1991). The trial court is vested with considerable discretion and we will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Id.* We presume the correctness of the order prescribing the division. *Bixler v. Bixler*, 810 S.W.2d 95, 100 (Mo. App.1991). On appeal, the party challenging the division has the burden of overcoming the presumption. *Id.* Describing the award in terms of a percentage of marital assets is not meaningful unless considered together with the nature and extent of the property to be divided. *May v. May*, 801 S.W.2d 728, 734 (Mo.App.1990).

The trial court awarded Wife: (1) the family home, valued at $100,000.00; (2) a 1986 Volvo 740, valued at $8,000.00; (3) all accounts at Commerce Bank in her name, valued at $5,809.00; (4) all household goods, valued at $10,000.00; (5) the Mash Display SBA Loan, valued at $17,500.00; (6) fifty percent of Husband's IRA; and (7) an American Family Life Insurance policy on Wife's life, valued at $2,500.00. The trial court awarded Husband: (1) a 1984 Corvette, valued at $8,500.00; (2) a 1988 Mercedes, valued at $4,000.00; (3) Husband's interest in Mash Display Group, valued at $97,600.00; (4) the Alaska Meadows Partnership, value unknown; (5) fifty per-

cent of Husband's IRA; (6) an American Family Life Insurance Policy, valued at approximately $6,000.00; and (7) a Home Federal Savings Account, valued at $110.00.

The division of the marital property that the trial court made is supported by the record. It takes into full account the economic circumstances of the parties. *In re Marriage of Stuart*, 805 S.W.2d 309, 312 (Mo.App.1991). Husband's adjusted gross income in 1989 was $137,218.00. Husband's adjusted gross income in 1990 was $114,599.00. Wife, on the other hand, is unemployed. The parties agreed at Lindsey's conception that they would raise Lindsey in a home where one parent remained full-time. Wife's only income is, therefore, what she receives in the form of child support and maintenance.

The division of property also takes into account the desirability of awarding the family home to an unemployed wife who has custody of a minor child. § 452.330.1(1), RSMo.Cum.Supp. 1991. The award of the home to the custodial parent simply reflects an appropriate reluctance to uproot the custodial parent and child by requiring its sale. *Mika v. Mika*, 728 S.W.2d 280, 284 (Mo.App.1987). We note that Father argues that the equity in the marital residence provides Wife with a ready source of income, whether through its sale or a second mortgage. The parties' home is a non-income producing asset. *May v. May*, 801 S.W.2d 728, 734 (Mo.App. 1990). The equity in the house, though substantial, does not provide a steady income and is not readily accessible since Wife must maintain a home for herself and Lindsey.

Finally, another factor to be considered is the balance between income and non-income producing property. *Mika v. Mika*, 728 S.W.2d 280, 284 (Mo.App.1987). Here, the trial court awarded Husband all of the income producing property, namely, his interest in Mash Display Group, Inc. Husband argues that it is he himself, not his minority interest in a closely held corporation, that represents his ability to produce income. We disagree. The stock in

Mash Display Group is income producing whether it is the result of the fruit of Husband's labor or other shareholders in the organization. Considering all of these factors, we find that the trial court did not abuse its discretion in dividing the marital property. Husband's contention is, therefore, without merit.

▪▪▪ Husband additionally argues that the trial court erred in assigning to him the "lion's share of the marital debts." Specifically, Husband argues that the trial court saddled him with fifty-three percent of the marital debts. Trial courts are not obligated to allocate marital debts. *Johnston v. Johnston*, 778 S.W.2d 674, 677 (Mo. App.1989). It, however, is a commendable practice and serves to eliminate future dissension between the parties. *Id.* Debts of the spouses are not marital property. *Id.* However, the existence of the debt and who has the responsibility for paying the same is a factor the trial court should consider in a fair division of the marital property. *Id.*

▪▪▪ Here, the trial court allocated all of the debts to either Husband or Wife. The trial court had that authority. *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 457 (Mo.App. 1990). Just as we find no error in the trial court's division of the parties' assets, we find no error in its allocation of the parties' debts. Husband's contention is, therefore, without merit.

▪▪▪ We note the Husband argues that without a finding a marital misconduct, the record will not support the disproportionate award of marital property and debts. We disagree. The trial court did make a finding of fact that Husband engaged in marital misconduct. However, there is no indication that the trial court took this factor into consideration in dividing the parties' marital property and debts. Moreover, regardless of whether Husband engaged in post-separation marital misconduct, the trial court's division of the parties' assets is not so unduly weighted in favor of Wife as to amount to an abuse of discretion.

▪▪▪ Second, Husband argues that the trial court erred in awarding Wife $1,700.00 per month as and for child support. Specifically, Husband argues that marital misconduct is not to be considered when determining the amount of child support pursuant to § 452.340, RSMo.Cum. Supp.1991. Even if Husband engaged in post-separation marital misconduct, there is absolutely no indication in the record that the trial court considered this evidence in determining Husband's child support obligation. Husband's contention is, therefore, without merit.

▪▪▪ Third, Husband argues that the trial court erred in awarding Wife's attorney $6,000.00 as and for his attorney's fees. Specifically, Father contends that Wife failed to plead or prove marital misconduct or such other statutory factors that would support this award. In a dissolution action, the trial court has broad discretion in awarding or denying attorney's fees. § 452.355, RSMo.Cum.Supp.1991; *In re Marriage of Gourley*, 811 S.W.2d 13, 22 (Mo.App.1991). The award will be disturbed on appeal upon a showing that the trial court abused its discretion. *In re Marriage of Gourley*, 811 S.W.2d at 22. The court must consider all relevant factors, including the resources of both parties. *Mika v. Mika*, 728 S.W.2d 280, 285 (Mo.App.1987). The trial judge is considered an expert in the necessity, reasonableness and value of attorney's services. *May v. May*, 801 S.W.2d 728, 734 (Mo.App.1990).

Wife's attorney testified that coming into trial, he had spent 105.5 hours on this case, at a rate of $100.00 per hour, for a total bill of $10,500.00. He further testified that Wife had paid him $1,500.00 for his services and Husband had paid him $2,780.00 for his services. The trial court ordered Husband to pay an additional $6,000.00 toward Wife's attorney's fees. Thus, Husband would be responsible for $8,780.00 of Wife's attorney's fees while Wife would be responsible for $1,720.00 plus any expenses incurred for trial and post-trial matters. As previously stated, in both 1989 and 1990, Husband earned over $100,000.00. Wife's income, on the other hand, is limited to what she receives in the form of maintenance and child support. Husband's great-

er ability to pay Wife's attorney's fees was sufficient to support the award. *In re Marriage of Stuart,* 805 S.W.2d 309, 314 (Mo.App.1991). Thus, regardless of whether Husband engaged in marital misconduct, the trial court did not abuse its discretion in ordering Husband to pay Wife's attorney's fees. Husband's contention is, therefore, without merit.

■ Fourth, Husband argues that the trial court erred in awarding Wife $870.00 per month as and for monthly maintenance. Husband contends that without a finding of marital misconduct, the record will not support a periodic maintenance award. We disagree. Here, the trial court simply gave due consideration to the statutorily enumerated factors in § 452.335, RSMo.Cum.Supp.1991, which we will address more thoroughly in Husband's third point. Although the trial court did find that Husband engaged in marital misconduct, there is absolutely no indication that the trial court considered this when it awarded Wife maintenance. Husband's contention is, therefore, without merit. Husband's entire first point is denied.

Husband's second point is that the trial court erred in failing to: (1) follow the presumed child support amount set forth in Rule 88.01 and Form 14; (2) make a finding of the parties' gross monthly incomes as required by Rule 88.01; and (3) require the parties to prepare and introduce Form 14 as required by Rule 88.01. We address each of these three contentions separately.

■ Section 452.340.7, RSMo.Cum.Supp.1991, mandates the use of the child support guidelines in determining the amount of child support. *Rothfuss v. Whalen,* 812 S.W.2d 232, 237 (Mo.App. 1991). Rule 88.01 requires a court in making its award to consider "all relevant factors, including: (a) the financial resources and needs of the child; (b) the financial resources and needs of the parents; (c) the standard of living the child would have enjoyed had the marriage not been dissolved; (d) the physical and emotional condition of the child; and (e) the educational needs of the child." The factors correspond with the provisions of § 452.340.1,

RSMo.Cum.Supp.1991. Section 452.340.8, RSMo.Cum.Supp.1991, and Rule 88.01 create a rebuttable presumption that the amount of child support calculated pursuant to the guidelines is the amount to be awarded. *Rothfuss v. Whalen,* 812 S.W.2d at 237. This presumption is rebutted by a written finding or specific finding on the record that the amount calculated pursuant to the guidelines would be unjust or inappropriate in a particular case. *Id.*

■ Although use of the guidelines is mandatory, a wide discretion is vested in the trial court with respect to the granting of child support, and that discretion is expressly retained under § 452.340.8, RSMo. Cum.Supp.1991; *Rothfuss v. Whalen,* 812 S.W.2d at 237. Appellate courts review the amount of child support only to determine if there has been an abuse of discretion or erroneous application of the law. *In re Marriage of Zavidil,* 806 S.W.2d 506, 511 (Mo.App.1991). The appellant has the burden of demonstrating error and the incorrectness of the trial court's judgment. *Id.* Although the Missouri Child Support Guidelines have been accorded substantial consideration in determining and reviewing child support awards, such guidelines are not to be automatically or rigidly applied. *Id.* The guidelines are simply formulas or schedules to consider. *Id.* They leave significant room for sound discretion. *Id.* Moreover, a party's testimony as to children's expenses is sufficient evidence on which to base an allowance of child support. *Id.* Such testimony need not be proved with absolute particularity. *Id.* The trial court, at its option, may accept or reject such evidence. *Id.*

■ Here, the trial court found that the application of the guidelines would be unjust or inappropriate. Review of the record indicates that there is sufficient evidence to support the trial court's conclusion. In Wife's statement of incomes and expenses, she stated that Lindsey's direct living expenses are as follows: (1) $300.00 per month for food; (2) $100.00 per month for clothes; (3) $25.00 per month for medical care, dental care and drugs; (4) $25.00 per month for recreation; (5) $5.00 per

month for laundry and cleaning; and (6) $210.00 per month for school and books. These expenses total $665.00. Moreover, her statement said the following expenses are required to maintain Lindsey's previous standard of living: (1) mortgage payments, $732.00; and (2) utilities, $269.77. Thus, Lindsey's total living expenses are $1,666.77. The trial court's award of $1,700.00 per month child support is almost identical to Wife's calculations. Since a party's testimony as to expenses is sufficient evidence on which to base a child support award, the trial court's determination was not erroneous.

Moreover, there is sufficient evidence from which the trial court could determine that Husband is able to pay said sum. Husband's statement of income and expenses indicates that he has a net take home pay of $4,650.75 a month.[1] Such monthly income is sufficient to cover $1,700.00 for child support. The trial court neither abused its discretion nor erroneously applied the law in determining Husband's child support obligation.

■■■ Husband next contends that the trial court erred in failing to make a finding of the parties' gross monthly income as required by Rule 88.01. Husband cites no authority for this proposition. Moreover, it is incorrect. Quite simply, Rule 88.01 does not require the trial court to make a finding of the parties' monthly gross income. Thus, the trial court did not err.

■■■ Finally, Husband argues that the trial court erred in failing to require the parties to prepare and introduce Form 14. Husband contends that since the entry of judgment in this case, a number of cases have discussed the requirement of submission of a completed Form 14 in order to appeal the decision of the trial court. Hus-

band asserts that each of these decisions was reached after judgment in this case and require this matter to be remanded for further findings, and introduction of a completed Form 14. We disagree.

We have previously held that Rule 88.01 requires both parties to complete Form 14. *Behnke v. Behnke*, 829 S.W.2d 45, 46 (Mo. App.1992). We have also held that the completed forms are to be made part of the record. *Id.* Here, Husband states that each party did prepare and introduce a completed Form 14. Specifically, Husband states: "[a]lthough both parties undoubtedly prepared a Form 14 with their respective counsel and the trial court prepared one as well, the record contains no such determination to support or contradict the trial court's finding." In other words, the completed forms are not part of the record. We, however, need not remand this case to the trial court for further findings and introduction of completed forms. Where no form or forms are included in the legal file, an appellant seeking relief from a child support award, does so at his or her own peril. *Id.* Thus, Husband proceeded at his own peril. Moreover, since the trial court's determination, that the amount of child support calculated pursuant to the guidelines would be unjust or inappropriate in this particular case, is supported by substantial evidence, the value of the completed forms is nominal. Husband's second point is denied.

Husband's third point is that the trial court erred in awarding Wife periodic maintenance. Husband contends that the court failed to consider Wife's intentional unemployment, underemployment or Wife's potential to earn an adequate income.

---

1. Husband's Exhibit 5, his 1991 W–2 Wage and Tax Statement, showed a year end total of $104,966.72 or a monthly gross income of $8,747.22. Husband, however, argues that this figure should not be used because it includes as income a car allowance of $125.00 a week and an insurance agreement to fund the stock purchase agreement in the amount of $13,000. Husband also argues that Mash Display Group, Inc. has shown a general decline and more specific decrease in its net profits, leading to a twenty

percent across the board payroll reduction in January 1991. Husband contends that the trial court could have and should have considered these factors in assigning a gross monthly income to Husband for the purpose of calculating the Form 14 presumptive amount. Since we do not know what figure the trial court used in its determination of Husband's monthly gross income, we have elected to use the lower figure, that which Husband provided in his statement of income and expenses.

Trial courts are vested with considerable discretion in granting maintenance orders. *In re Marriage of Zavidil,* 806 S.W.2d 506, 512 (Mo.App.1991). We review an award of maintenance only for an abuse of discretion. *Id.* A dissolution decree awarding maintenance will be affirmed unless the award is against the weight of the evidence or erroneously declares the law. *Id.* The burden is on the party challenging a maintenance award to show the award was an abuse of discretion. *Id.* Unless the amount of maintenance is patently unwarranted or is wholly beyond the means of the spouse who pays, interference by this court is not appropriate. *Id.*

In determining whether a maintenance award is warranted, the trial court must first find that the spouse seeking maintenance: (1) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. § 452.335.1(1–2), RSMo.Cum.Supp.1991.

With respect to the first factor, the law is well-settled that a spouse is not required to dispose of marital property before being entitled to maintenance. *Klenke v. Klenke,* 742 S.W.2d 621, 624 (Mo.App.1987). Here, the major assets awarded to Wife were the marital home, the Mash Display SBA Loan and fifty percent of Husband's IRA. These assets are not of the sort which are capable of providing available investment income to provide for Wife's reasonable needs. Wife is without adequate means to support herself while Husband has adequate means to both support himself and provide for Wife.

Additionally, Wife was awarded sole custody of the parties' minor child. Wife testified that the parties had decided that it was in the best interests of the child that one parent, namely Wife, remain at home full-time. It was economically feasible for her to continue this arrangement after dissolution. Under these circumstances, the trial court acted within its discretion in not requiring Wife to seek employment outside the home. *In re Marriage of Stuart,* 805 S.W.2d 309, 314 (Mo. App.1991).

Alternatively, Husband argues that the court should have allowed maintenance for a short period of time until Wife could establish employment. Specifically, Husband argues that Wife is capable of supporting herself upon attainment of a college degree in six to eight years. A decision to limit maintenance is justified only where substantial evidence exists of an impending change in the financial conditions of the parties. *In re Marriage of Stuart,* 805 S.W.2d 309, 314 (Mo.App.1991). As in *Stuart,* the trial court found that there was no evidence of an impending change in the financial conditions of the parties and no reasonable expectation of any change in the foreseeable future which would allow Wife to become self-supporting. The maintenance award was, therefore, within the trial court's discretion. Husband's third point is denied.

Husband's fourth point is that the trial court erred in refusing to admit testimony from a licensed cosmetologist, Linda Stolarski. Husband contends that Stolarski's expert testimony presented a factual issue for determination by the fact finder.

Whether a witness' qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling will not be disturbed on appeal unless there is a clear showing of abuse. *Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo.App.1989). The issue in determining whether a particular witness is an expert is not whether others are better qualified. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). The question is whether the witness possesses peculiar knowledge, wisdom or skill regarding the subject of inquiry, acquired by study, investigation, observation, practice or experience. *Id.* If the witness has some qualifications, the testimony should be permitted. *Hord v. Morgan,* 769

S.W.2d at 448. Further, the extent of an expert's experience or training in a particular field goes to the weight of the testimony and does not render the testimony incompetent. *Id.*

Clearly, Stolarski has some qualifications. She has been a licensed cosmetologist for twenty years. Like Wife, she, too, is a single mother. She testified that she worked hours around her lifestyle and children.

The extent of Stolarski's training was before the court and it was a question for the trial court judge to determine the weight it should be given. *Id.* The trial court determined it should be given little or no weight. The trial court did not abuse its discretion in reaching this conclusion. Stolarski did not give an expert opinion about cosmetology. Rather, she testified as to what she did in cosmetology. The trial court correctly found Stolarski's testimony would not lead the trial court to believe a market existed for additional cosmetologists at Wife's level. Husband's fourth point is, therefore, denied.

Husband's fifth point is that the trial court erred in refusing to admit testimony from Richard Wolff, CPA, regarding the marketability of a minority shareholder's interest. The parties stipulated that Wolff is a certified public accountant and is qualified to testify about financial matters as he is the accountant for Mash Display Group, Inc. The parties further stipulated that Wolff valued Husband's portion of the stock at $97,600.00. Husband then sought to impeach Wolff by seeking to have him testify that Husband could not walk out tomorrow and get $97,600.00 for his interest. Wolff stated, in an offer of proof, that his calculation of the amount "was not based on a going concern or anything like that, as if he would go out and try to sell it on the open market." However, when the court questioned Wolff, he said the value was the fair market value of the business if the business were liquidated.

Generally, one cannot impeach his own witness since he is considered to have vouched for the witness' credibility. *Dement v. City of Bonne Terre,* 669 S.W.2d

278, 280 (Mo.App.1984). To warrant impeachment of one's own witness, therefore, there must be actual surprise at the testimony the witness gives, and, even then, it is only appropriate where the evidence is of such an affirmative character as to be favorable to the adverse party, and, therefore, prejudicial to the party who was misled into calling the witness. *Id.*

Here, Husband knew what Wolff's testimony would be. He, therefore, stipulated to his testimony. Husband cannot claim he was surprised by Wolff's testimony. Thus, the trial court did not err in limiting Wolff's testimony. Husband's fifth point is denied.

Husband's sixth point is that the trial court erred in refusing to allow him to inquire about Wife's actual expenses for the month preceding trial, February 1992. At trial, Husband made no offer of proof regarding Wife's expenses for this month. A party desiring to preserve as an issue the exclusion of evidence bears the burden to make an offer of proof where feasible to do so. *Bussell v. Leat,* 781 S.W.2d 97, 102 (Mo.App.1989). The failure to make an offer of proof requires the reviewing authority to speculate on what the evidence may have been. *Id.* Here, Husband failed to preserve this issue. We, therefore, decline to consider Husband's sixth point.

Husband's seventh point is that the trial court erred in ordering him to pay the Mastercard debt. Specifically, Husband contends that this debt is exclusively Wife's since she used the Mastercard after separation and she refused to present the receipts to Husband for reimbursement by his medical insurer.

Husband's attorney elicited the following dialogue with respect to the parties' Mastercard debt:

Q. (By Husband's attorney to Wife) ..., have you ever submitted any medical expenses for yourself or for Donna (sic) to your husband which he has not in turn passed on to his medical insurer?

A. Are you saying have I not given Don any medical receipts?

Q. Has he ever refused to pass on any of these unpaid medical expenses that you've testified to on your Mastercard or to this doctor who's—

A. In mediation, we agreed to put everything on Mastercard that was medical, and he would take care of it. He has made no offer to take care of it. Mastercard ceases to exist in August. And he has not asked for them. Neither have I tried to force them or hand them to him. No. Is that what you're asking?

Q. So, you're saying that you have medical bills that have not been paid that you've never given to Don to turn over to the medical insurer; is that correct?

A. If you word it that way. Yes.

This exchange indicates that the parties agreed during mediation that Wife would put all medical expenses on the parties' Mastercard and Husband would take care of it. Although Husband contends Wife never presented the receipts to him for reimbursement, the above testimony indicates that Wife contends that Husband never asked for the receipts. Neither party cited, nor could we find, any indication regarding whether the parties agreed during mediation that Husband would ask Wife for the medical receipts or Wife would present Husband with the receipts. However, as we have previously stated, the trial court is not obligated to allocate marital debts. *Johnston v. Johnston*, 778 S.W.2d 674, 677 (Mo.App.1989). It, however, is a commendable practice and serves to eliminate future dissension between the parties. *Id.* Here, as previously stated, the trial court correctly gave consideration to the debt in the division of marital property. The trial court did not, therefore, err in ordering Husband to pay the parties' Mastercard debt. Thus, Husband's seventh point is denied.

For all of these reasons, the trial court's decision is affirmed.

GARY M. GAERTNER, P.J., and SMITH, J., concur.