Joanne M. CHAMBERS,
Respondent/Cross–
Appellant,

v.

Wayne J. CHAMBERS, Appellant/Cross–
Respondent.

No. 66647.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 21, 1995.

Elaine A. Marten, John A. Walsh, Boudoures, Schneider & Walsh, St. Louis, for appellant.

Carl F. Kohnen, Florissant, Alan Agathen, Boisaubin & Agathen, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant/cross-respondent, Wayne J. Chambers ("husband"), appeals from the judgment entered by the St. Louis County Circuit Court dissolving his marriage to respondent/cross-appellant, Joanne M. Chambers ("wife"). Wife also appeals aspects of the judgment. We affirm as modified.

Husband and wife were married June 22, 1968. Four children were born of the marriage; two were emancipated at the time of the November 23, 1993, dissolution hearing. Husband and wife mutually agreed that husband would get primary physical custody of the two unemancipated children, Thomas and Matthew, who were then fifteen and nineteen years old. Husband did not expect any child support from wife.

Wife, fifty-one years old at the time of the hearing, earned a degree in elementary education and a Missouri lifetime teaching certificate in 1965. She worked full-time as a teacher for three years, until her marriage to husband in 1968. For the next twenty-five years, wife did not work at any full-time jobs outside the home, but did work at occasional part-time jobs: a few months of substitute teaching in the 1970's while husband was out of work, a year and a half of preschool teaching in the early 1980's (ten hours per week), and preschool teaching during 1992 and 1993 (twenty hours per week).

At the time of the dissolution hearing, wife was working as a substitute teacher, averaging two days of work a week and earning fifty-five dollars per day ($110 per week).

Wife's monthly net income from her teaching position, amortized over twelve months, was $327.47. Wife was also a licensed real estate agent, listed as a sales associate with Coldwell Banker since September of 1993; however, she had not completed all her real estate classes and had not sold or shown any houses as of the date of the hearing. Wife had also been an Amway distributor for the preceding four to five years, but had never earned a profit from this work.

Wife had been suffering from hearing loss and tinnitus in her right ear for about five years at the time of the hearing. She was undergoing treatment for this condition, and wore a hearing aid. When asked whether this condition affected her work as a substitute teacher, wife testified it was "somewhat limiting" in that she could not hear or understand some of the children or understand messages over the intercom. However, there was no evidence this hearing problem prevented wife from seeking and obtaining employment.

Wife attempted to find full-time teaching positions in several school districts, but was told there were no openings at the elementary level and was advised not to bother sending in applications. Wife testified her age, and the fact that her teaching certificate had been obtained twenty-eight years ago, constituted obstacles to her obtaining a teaching position. She also claimed the school district in which she was working as a substitute teacher frowned upon her working as a substitute in other school districts. Wife applied for jobs such as cashier, salesperson, or clerk at various department and grocery stores, restaurants, and offices, but met with no success.

Wife set her monthly expenses at $1,700. Wife asked for maintenance in the amount of $1,372, the difference between her expenses and her current monthly income. Wife also asked that the marital home, which she valued at $105,200, be sold and the proceeds distributed equally between herself and husband; as an alternative, wife asked that husband buy her half-share of the home. Wife further requested that a 120–acre plot of undeveloped land in Perry County, which she and husband owned jointly, be divided equal-

ly or sold and the proceeds divided equally. Wife valued this land at $325 per acre, or $39,000. Finally, wife asked that she be awarded attorney's fees.

Husband worked for McDonnell Douglas at the time of the hearing. Husband claimed in his statement of income that he grossed $839 per week, for a weekly net income of $567; however, he admitted on cross-examination that, in 1993, he had earned a gross weekly income of $1,062, for a net weekly income of $801.

Husband tallied his monthly expenses at $3,677, and claimed he would not be able to meet these expenses if he were required to pay any maintenance to wife. However, part of these expenses were for the two older, emancipated sons, who were still living at home. Further, husband claimed over $500 per month as "mortgage payments," even though there was no outstanding mortgage on the marital home. With respect to this claimed expense, husband testified to the following:

> Q. You'll see an expense there for a house payment. You do not presently have a house payment; do you?
>
> A. No.
>
> Q. But you anticipate that in the resolution of this dissolution of marriage, you're going to have to take out a loan on the house in order to pay some money to Mrs. Chambers?
>
> A. That's correct.

Husband also claimed monthly expenses of $688 for Thomas' and Matthew's tuition and books at a private school which offered special classes for students with learning disabilities. Both Matthew, who was to graduate that spring, and Thomas, who was a freshman at that time, attended this school due to deficiencies in their reading and writing skills.

Husband objected to selling the marital home, testifying it was in Thomas' and Matthew's best interests to continue to reside there. Husband valued the marital home at $80,000, and offered to pay wife for her half interest. Husband proposed to do this by means of a direct payment of $20,000 and a transfer of a larger part of his McDonnell Douglas savings plan, equal to $60,000. Husband also wanted to keep the Perry County property, on the ground he and wife had promised to leave the property to the children. Husband valued the Perry County property at $100 per acre, or $12,000. Finally, husband proposed that he and wife contribute $10,000 each to a trust fund, to pay for Thomas' and Matthew's future educational expenses; any remainder would be distributed equally back to husband and wife.

The trial court issued a decree of dissolution on February 4, 1994. No child support was ordered. The court found wife "to be in moderately poor health" and lacking adequate means to support herself, found husband of adequate means to provide support to wife, and ordered husband to pay wife maintenance of $600 per month. The court then divided the marital property in the following manner:

| A. | Marital Property Awarded to Wife | |
|----|----------------------------------|------|
| 1) | 1984 Crown Victoria | $2,500 |
| 2) | ½ household goods and furniture | 1,000 |
| 3) | Amway assets and inventory | 500 |
| 4) | ½ McDonnell Douglas employee retirement income plan | 8,500 |
| 5) | ½ McDonnell Douglas employee retirement income plan "Hourly East" | 200 |
| 6) | ½ marital 62.5% of Pattern Makers pension trust fund | 5,625 |
| 7) | 28.5% interest in marital residence | 28,500 |
| 8) | Payment to educational trust | (5,000) |
| 9) | 75% portion of McDonnell Douglas employee savings plan by QDRO | 60,000 |
| 10) | ½ proceeds, Perry County property | 15,000 |
| | | $116,825 |

| B. | Marital Property Awarded to Husband | |
|----|-------------------------------------|------|
| 1) | 1989 Ford van subject to 100% lien | $0 |
| 2) | UPS checking account | 100 |
| 3) | St. Louis Postal Employees Credit Union account | 150 |
| 4) | Pistol | 100 |
| 5) | ½ household goods and furniture | 1,000 |
| 6) | Tools and tool box | 125 |
| 7) | ½ McDonnell Douglas employee retirement income plan | 8,500 |
| 8) | ½ McDonnell Douglas employee retirement income plan "Hourly East" | 200 |
| 9) | ½ marital 62.5% of Pattern Makers pension trust fund | 5,625 |
| 10) | 71.5% interest in marital residence | 71,500 |
| 11) | 25% portion of McDonnell Douglas employee savings plan | 20,000 |
| 12) | Payment to educational trust | (5,000) |
| 13) | ½ proceeds, Perry County property | 15,000 |
| | | $117,300 |

As the above division shows, the court valued the marital residence at $100,000 and ordered it sold, with twenty-eight and a half percent of the proceeds distributed to wife and seventy-one and a half percent distribut-

ed to husband. The court valued the Perry County property at $30,000 and ordered it sold as well, with half the proceeds distributed to each spouse. The court additionally ordered each spouse to pay $5,000 from their half share of the proceeds from the sale of the Perry County property into an educational trust. The money in this trust was to be applied towards the costs of Thomas' and Matthew's secondary education, with any residual unused amount distributed back equally to husband and wife. Finally, the court ordered husband to pay $4,500 of wife's $5,900 in attorney's fees.

Both sides appeal. For his first point on appeal, husband contends the trial court abused its discretion in awarding wife maintenance, claiming there was insufficient evidence to support the court's finding that wife was without adequate means to support herself and was unable to support herself through appropriate employment. Wife also appeals the maintenance award, arguing $600 per month falls short of meeting her essential needs and husband was capable of providing more support.

■ Under RSMo § 452.335.1,[1] a spouse seeking maintenance must show he or she (1) lacks sufficient property, including marital property apportioned to him or her, to provide for his or her reasonable needs; and (2) is unable to support himself or herself through appropriate employment. Awards of maintenance are matters resting within the broad discretion of the trial court; we review only for an abuse of that discretion. *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953 (Mo.App.E.D.1993).

■ Husband claims there was insufficient evidence to support a finding that wife was unable to support herself through full-time employment. The evidence at the hearing was to the contrary. Wife was primarily a homemaker during her twenty-five marriage, working outside the home only intermittently. Her experience as a teacher was limited to the three years she worked prior to the marriage, and the short part-time stints she put in since then as a preschool teacher or substitute teacher. Wife had essentially

been out of the job market for twenty-five years, and was competing against younger teachers with more up-to-date credentials, training, and experience. She had been told not to bother applying to several of the school districts she inquired about. Additionally, wife had a hearing problem, which the court apparently believed further limited her options. Also, while wife was a licensed real estate agent, she had only recently been listed with Coldwell Banker, had virtually no experience as an agent at the time of the hearing, and was yet to earn any income from the real estate field. The court did not err in finding wife entitled to maintenance.

■ In the first point of her cross-appeal, wife also claims error with respect to the maintenance award. Wife's contention is that the award leaves her short of being able to meet her reasonable needs. However, even assuming the paying spouse has adequate resources to pay a greater amount of maintenance, RSMo § 452.335 does not require that every need of the recipient spouse be met. *May v. May*, 801 S.W.2d 728, 732 (Mo.App.E.D.1990). A divorcing spouse has an affirmative duty to seek full-time employment after dissolution, and it is not always an abuse of discretion when a maintenance award falls short of the recipient spouse's monthly expenses. *Carter v. Carter*, 869 S.W.2d 822, 830 (Mo.App.W.D.1994). Also, the marital property awarded to the recipient spouse bears upon the amount of maintenance to be awarded. *Id.* at 830–831.

■ Wife was, and is, capable of full-time employment. Also, wife was awarded a substantial amount of marital property, including $60,000 from husband's McDonnell Douglas employee savings plan, available to her pursuant to a qualified domestic relations order ("QDRO"). While wife was not required to deplete her share of the marital property before being entitled to maintenance, in determining entitlement to or amount of maintenance, courts should take into account the recipient spouse's reasonable expectation of income from the property awarded to him or her, including possible interest. *Jung v. Jung*, 886 S.W.2d 737, 740

---

**1.** All statutory references are to RSMo 1994 except where otherwise indicated.

(Mo.App.E.D.1994). We find the maintenance award of $600 within the broad discretion of the trial court. Both husband's and wife's challenges to the maintenance award are denied.

■ For his second point on appeal, husband contends the court erred in ordering the marital home and the Perry County property sold and the proceeds distributed. According to husband, the court abused its discretion by ordering the sale of the marital home and the Perry County property.

■ The trial court is afforded considerable discretion in dividing marital property. *Baldwin v. Baldwin,* 905 S.W.2d 521, 523 (Mo.App.E.D.1995). The sale of marital property is within the power of the trial court. *Id.* "There are two general conditions that are sought before a court enters a sale: (1) a finding that the property cannot be divided in kind, and (2) a finding that a sale would be in the best interest of one or both of the parties." *Id.* (citing *Swinford v. Swinford,* 682 S.W.2d 189, 191 (Mo.App.W.D. 1984)). There must be a sufficient evidentiary foundation for both these conditions. *Breda v. Breda,* 788 S.W.2d 769, 771 (Mo.App. E.D.1990).

■ A marital residence is not divisible in kind; however, if it is possible to award one spouse the residence in its entirety and offset that award by awarding the other spouse other marital property of approximately equal value, the residence need not be sold. *See id.; Baldwin,* 905 S.W.2d at 524. Further, courts may order cash awards to effect a just division of marital property, when it is impossible or imprudent to divide the property in kind. *Reeves v. Reeves,* 904 S.W.2d 412, 413 (Mo.App.E.D.1995). In determining whether to order the marital residence sold, courts should also consider the judicial reluctance to uproot the custodial parent and unemancipated children residing there. *Vehlewald,* 853 S.W.2d at 949.

Here, we find the sale of the marital home would not be in the best interests of the parties. Husband argues the forced sale of his and wife's marital home would not be in either party's interest, as he and all four children are residing there, and wife did not care "one way or the other if [husband] kept the house and lived in it with the boys, as long as she got her money." Husband is correct in stating wife has no interest in forcing a sale of the marital home, as long as she receives the value of her equity interest; in her own brief, wife suggests "[i]f this Court wishes to allocate to her other presently liquid assets of a value of $28,500 [the value of wife's twenty-eight and one-half share of the marital home], secured by an interest in the real estate, [she] would not object." We accordingly do so. Rule 84.14 gives this Court the power to grant such relief as ought to be given. We modify the trial court's decree by deleting its order that the marital home be listed on the market and the proceeds distributed upon its sale, and replace it with an order that husband pay wife for her share of the home, either in cash or by awarding marital property of commensurate value to wife, on such terms as the parties agree or as the Court may order.

■ Husband also challenges the trial court's order that the Perry County property be sold. We see no error requiring reversal or modification. Neither party derives income from this land; there is no evidence a sale of the undeveloped plot would not bring its full value. *Contra Parker v. Parker,* 744 S.W.2d 469, 471 (Mo.App.W.D.1987); *In re Marriage of Wilson,* 727 S.W.2d 226, 227 (Mo.App.S.D.1987). Further, division in kind would be imprudent on the facts of the immediate case. Husband wanted each party to contribute towards an educational trust fund for Thomas and Matthew; to achieve this, the court ordered the Perry County property sold and its proceeds used to set up the trust. Setting aside the sale of the Perry County property would deprive the parties of the funds necessary to set up the trust husband, himself, requested. Under the circumstances here we believe the sale of the Perry County property should be upheld.

■ For his third point on appeal, husband contends the court abused its discretion in ordering him to pay $4,500 of wife's attorney's fees. We disagree. RSMo § 452.355.1 gives the trial court broad discretion in awarding attorney's fees in dissolution pro-

ceedings, and we overturn such awards only if there is an abuse of discretion. *Vehlewald,* 853 S.W.2d at 950. "The court must consider all relevant factors, including the resources of both parties." *Id.* The court is deemed to possess expertise as to the necessity, reasonableness and value of the services rendered by the attorneys before it. *Id.* The record here supports a finding that wife lacked sufficient resources to pay all her attorney's fees. Husband's greater ability to pay these fees is sufficient to support the award. *See id.* at 950–951. The court did not abuse its discretion in ordering husband to pay $4,500 of wife's attorney's fees. Point denied.

Finally, wife, in the second point of her cross-appeal, challenges the trial court's decree that each spouse contribute $5,000 from their share of the net proceeds of the sale of the Perry County property to the educational trust fund. Wife contends the record shows the remaining educational needs of Thomas and Matthew cost, at most, $4,000 to $4,500—far less than the $10,000 ordered paid into the trust—and thus the trial court's order is contrary to the "uncontroverted evidence in this case." Despite wife's contention, we defer to the trial court's calculation of Thomas' and Matthew's future secondary educational expenses. Point denied.

The trial court's decree of dissolution is affirmed as modified.

SMITH, P.J., and RHODES, J., concur.