Manuel W. RUNEZ, Petitioner–
Appellant,

v.

Evelyn RUNEZ, Respondent–
Respondent.

No. 24017.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 25, 2002.

Ronald D. White, Williams, robinson, White & Rigler, P.C., Rolla, for appellant.

Charles T. Rouse, Salem, for respondent.

NANCY STEFFEN RAHMEYER, Judge.

On cross motions to modify maintenance, the trial court increased the maintenance Manuel W. Runez ("Husband") is to pay Evelyn Runez ("Wife") from $1,000 to $2,000 per month. Husband appeals the increased award. We affirm the trial court's judgment.

Husband and Wife were divorced in 1982 after being married for approximately twenty years. Wife was 17 years old when she and Husband married. She quit going to school because Husband wanted her to stay at home. They had five children, the youngest of whom was 29 years old at the time of the modification trial. Wife was 56 years old and Husband was 60 years old. Both parties are natives of the Philippines; Wife became an American citizen ten years ago. Wife has lived in California for approximately fifteen years and Husband lives in Maryville, Missouri. Husband has been a practicing physician since before the dissolution of marriage and at the time of the modification trial he was practicing as a surgeon and had a general medical practice as well. Wife raised the five children and did not work outside the home until 1985. She has been employed in her current position as a front desk clerk with Motel 6 for thirteen years.

The original order of maintenance of $300 per month for 36 months was reversed by this court and increased to $1,000 per month with no fixed termination date. *See Runez v. Runez,* 666 S.W.2d 430 (Mo.App. S.D.1983). In November 1999, Wife filed a motion to increase maintenance and Husband countered that the maintenance should be terminated because of Wife's failure to make a good faith and reasonable effort to attain self-sufficiency.

■ A maintenance award will not be disturbed on appeal unless it results from an abuse of discretion. *Bauer v. Bauer,* 28 S.W.3d 877, 882 (Mo.App. E.D.2000). A trial court's determination on a motion to modify maintenance is to be affirmed unless it is not supported by substantial evi-

dence, is against the weight of the evidence, or erroneously declares or applies the law. *Haynes v. Almuttar*, 25 S.W.3d 667, 671 (Mo.App. W.D.2000) [quoting *Sprouse v. Sprouse*, 969 S.W.2d 836, 837–38 (Mo.App. W.D.1998)]. We accept all evidence, and inferences therefrom, favorable to the trial court's judgment as true and disregard contrary evidence. *Id.* We defer to the trial court's ability to assess the credibility of the witnesses. *Id.*

Modification of maintenance is governed by § 452.370.1, RSMo 2000, which states in relevant part:

> [T]he provisions of any judgment respecting maintenance .... may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any .... maintenance judgment, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be, shared by a spouse or other person with whom he or she cohabits ....

The movant in a proceeding to modify maintenance has the burden of proving with detailed evidence changed circumstances so substantial and continuing that the current terms of maintenance are unreasonable. *Lamont v. Lamont*, 922 S.W.2d 81, 85 (Mo.App. W.D.1996). To prove changed circumstances in a modification proceeding there must be a "departure from prior known conditions." *Haynes*, 25 S.W.3d at 672 [quoting *Lemmon v. Lemmon*, 958 S.W.2d 601, 604 (Mo. App. W.D.1998) ]. Husband has two points on appeal. First, that it was error to fail to terminate maintenance, and second, that it was error to increase maintenance. We turn to Husband's arguments.

In Husband's first point on appeal he contends that the trial court should have terminated maintenance to Wife altogether because Wife "failed to meet her obligation to make a good faith effort to become self-sufficient during the eighteen years since the original judgment was entered." A party "receiving maintenance 'is under a continuing duty to exert reasonable efforts to attain self-sufficiency and will not be permitted to benefit from inaction.'" *Halliday v. Boland*, 813 S.W.2d 34, 36 (Mo.App. E.D.1991) [quoting *Hicks v. Hicks*, 798 S.W.2d 524, 527 (Mo.App. 1990) ]. A recipient of maintenance is not required to become self-supporting, but must make reasonable efforts toward that goal. *Id.* A review of the evidence indicates Wife has met this requirement.

Wife is making reasonable efforts to become self-sufficient, but limitations restrict her ability to do so. Wife quit college in the Philippines to marry Husband and her only education since has been a typing and ten-key course she took shortly after the divorce. She uses the skills she learned there in her current job. She would be willing to go to school now if she could afford it, but she has to continue working. A review of Wife's financial situation reveals that she cannot afford to attend school and provide for herself. She did not work outside the home until 1985 because she was the primary caretaker of the children. Wife works full-time now, has done so for many years, and is now earning more than she has ever earned before. She has received raises in her current job and sought higher paying employment with other hotels five to ten years ago without success. Wife believes her age prevents her from getting a higher paying job and, as a result, has stopped applying for other jobs. She cannot get a second job to increase her earnings because that would require her to work at night and she

cannot drive at night. Wife also has some difficulty with the English language, a finding made by the trial court and evident in the trial transcript.

■ Wife is not guilty of inaction or passivity with respect to her duty as a recipient of maintenance, rather, she has not yet been able to become self-support-ive.[1] Not all spouses are capable of becoming self-supportive. This does not mean that they become ineligible for maintenance after a certain amount of time. "It is to be noted that the duty of a supported spouse receiving maintenance under a marriage dissolution decree is to expend the effort at attaining support from earned income and not necessarily to succeed." *Hartzell v. Hartzell,* 976 S.W.2d 624, 626 (Mo.App. E.D.1998) [quoting *Doerflinger v. Doerflinger,* 646 S.W.2d 798, 800 (Mo. banc 1983)]. Husband relies upon *Hartzell;* however, it does not support Husband's argument. In *Hartzell* the recipient of maintenance, the wife, admitted that she was voluntarily choosing not to work despite a long period of employment during the marriage. 976 S.W.2d at 625. That admission was a change of circumstances justifying modification of the maintenance award. *Id.* at 626. Husband presented no evidence that Wife is capable of becoming self-supportive, but merely argues that she should have become so by now. Husband's argument that maintenance should have been terminated because Wife failed to make a good faith effort to become self-sufficient is not supported by the evidence. Husband's first point is denied.

■ In Husband's second point he argues there was insufficient evidence to support the trial court's finding that there was a substantial change of circumstances justifying an increase in Wife's maintenance. We disagree and find that Wife met her burden of proving a change of circumstances justifying the increase in maintenance.

Wife moved to California after the dissolution because she had no family in Missouri whereas four of her sisters lived in the area of California to which Wife moved. The undisputed evidence was that the cost of living in California was higher than that of Texas County, Missouri where she lived at the time of the original maintenance award. Wife's rent payment was recently raised to $710 per month for her two-bedroom apartment, although even that is a discounted rate because of the length of time she has lived there. Without the discount her rent would be $850 per month. After paying her rent, Wife has approximately $150 left out of her net take-home pay that averages $860 a month. Thus, this move and her increased living expenses was a change from the circumstances that existed at the time the original maintenance award was made that increased Wife's need for maintenance.

The trial court properly considered Husband's increased income as a changed circumstance supporting an increase in maintenance. Section 452.370.1 mandates that the trial court consider the financial resources of both parties in a hearing for modification of a maintenance judgment. At the time of the dissolution, Husband's last three tax returns showed an average income of $73,697 per year. *See Runez,* 666 S.W.2d at 433. His 1999 tax return showed total income of $144,360, $39,826 of

---

1. At the time this court reviewed the original award of maintenance it appeared that Wife would have difficulty fully supporting herself in the future. This court found, "[T]here is no reasonable possibility that she will be able to earn any substantial sums in the near future. .... There was .... at least a fair inference that appellant's financial ability to support herself would not change." *Runez,* 666 S.W.2d at 433.

which was his current wife's earnings. Husband's base salary at the time of trial was $160,000, and he also worked in the emergency room every Wednesday for 24 hours at a time at the rate of $50 per hour, earning an average of $5,200 a month gross income. Husband also receives $1,500 a month in rent for his clinic building. Husband has retirement and deferred compensation accounts totaling over one million dollars. Husband owns the land and the clinic building and estimates he has $60,000 in equity in the building at a minimum. He has a house worth $266,000 that has three bedrooms, three bathrooms, three fireplaces, a study, a family room, a living room, and a dining room.[2] He owns three cars, including a motor home for which he paid $86,000 and a 1996 Range Rover whose fair market value is $35,000 with no debt owed on it. Husband listed furniture, jewelry, and other equipment valued at $250,000 on a financial statement he completed a year before trial. Husband's monthly expenses include a voluntary monthly deposit of $1,000 a month into his children's savings accounts. Husband's financial circumstances have improved markedly since the original maintenance award was made.

In contrast, an examination of the financial resources of Wife shows that she rents a two-bedroom apartment with her daughter and ten-month-old grandson. The testimony indicates it is a common custom in the Philippine culture for adult children to reside with their parents. She cannot afford renter's insurance. Her daughter is laid off from her job and makes no financial contributions to the family. When her daughter was working, Wife helped care for her grandson. Wife drives a 1996 Toyota Corolla. She owes $4,000 on credit cards. She has no disability or retirement plan with her employer and has no savings.

In Husband's argument, he challenges Wife's expenses on the basis that there was no evidence as to Wife's expenses at the time of dissolution to enable an examination as to whether the expenses had changed. He also argues that Wife's actual expenses were not in evidence as Wife failed to separate her expenses from the expenses she pays for their youngest daughter and grandchild that live with Wife. Husband's point relied on does not ask us to review the amount of maintenance ordered by the trial court, only whether Wife proved a change of circumstances. We have reviewed the evidence of Wife's expenses and determine that the evidence was sufficient to show Wife's move and subsequent living expenses resulted in a greater need for maintenance. Sufficient evidence supported a finding that Wife's circumstances had changed substantially enough so as to support an increase in maintenance.

For the reasons stated above, Husband's points on appeal are rejected. The trial court's judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.

2. Husband owes $220,000 on his house because he refinanced it shortly before trial.