In re the MARRIAGE OF: Stacey P. CORNELLA and Frank A. Cornella.

Stacey P. Cornella, Petitioner–Respondent,

v.

Frank A. Cornella, Respondent–Appellant.

No. SD 30316.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 22, 2011.

Motion for Rehearing or Reconsideration and Transfer Denied March 16, 2011.

Application for Transfer Denied April 26, 2011.

John E. Price, Springfield, MO, for Appellant.

C. Ronald Baird, Springfield, MO, for Respondent.

JEFFREY W. BATES, Judge.

Frank Cornella (Husband) appeals from a judgment denying his motion to terminate maintenance to Stacey Cornella (Wife) and awarding her attorney's fees. *See* § 452.370; § 452.355.1.[1] Presenting seven points for decision, Husband challenges the court's rulings on the maintenance and attorney's fees issues. We affirm.

## I. Standard of Review

■■■■ In this court-tried case, our review is governed by Rule 84.13(d). *In re Marriage of Moyers,* 272 S.W.3d 500, 502 (Mo.App.2008). We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.; In re Marriage of Dolence,* 231 S.W.3d 331, 333 (Mo.App.2007). In assessing the sufficiency of the evidence, we examine the evidence and the reasonable inferences derived therefrom in the light most favorable to the judgment. *In re McIntire,* 33 S.W.3d 565, 568 (Mo.App.2000). It is not this Court's function to retry the case. *Souci v. Souci,* 284 S.W.3d 749, 753 (Mo. App.2009). "This is because credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of the testimony of any witness." *In re Marriage of Colley,* 984 S.W.2d 163, 166 (Mo. App.1998). On appeal, we defer to the trial court's credibility determination. *Souci,* 284 S.W.3d at 753. "An appellate court exercises extreme caution in considering whether a judgment should be set aside on the ground that it is against the weight of the evidence and will do so only upon a firm belief that the judgment was wrong." *Simpson v. Strong,* 234 S.W.3d 567, 578 (Mo.App.2007). The phrase "weight of the evidence" means its weight in probative value, rather than the quantity or amount of evidence. *Nix v. Nix,* 862 S.W.2d 948, 951 (Mo.App.1993). The weight of the evidence is not determined by mathematics, but depends on its effect in inducing belief. *Id.*

■■■ Within the confines of the law and the evidence, the trial court has sound discretion in determining issues concerning maintenance and attorney's fees. *In re Marriage of Baker,* 986 S.W.2d 950, 954 (Mo.App.1999). On these matters, this Court reviews for abuse of discretion. *Id.* "An abuse of discretion occurs only if the decree is so arbitrary or unreasonable that

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2010).

it indicates indifference and lack of proper judicial consideration." *In re Marriage of Woodson*, 92 S.W.3d 780, 785 (Mo. banc 2003). In addition, "[a]ll fact issues·upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c). With the foregoing principles in mind, and focusing as we must on the evidence most favorable to the judgment, the following facts were adduced at trial.

## II.  Factual and Procedural History

Husband and Wife married in May 1993 and separated in November 2000. They have two children: Nolan, born in April 1996; and Rosemary, born in March 1999 (hereinafter referred to individually by their given names and collectively as the children). After the parties' separation, Wife filed a petition for dissolution of marriage. The matter was tried, and a judgment (hereinafter referred to as the original judgment) was entered on March 6, 2003. The judgment required Husband to pay Wife maintenance in the sum of $4,874 per month. The maintenance award was modifiable. Husband also was required to maintain a $100,000 life insurance policy on his life, irrevocably designating Wife as a beneficiary during any period in which he is required to pay maintenance to her. The parties were awarded joint legal and physical custody of the children. The court prepared its own parenting plan which approximately gave Wife 75% and Husband 25% of the parenting time. Husband was ordered to pay child support of $1,770 per month. The original judgment became final, and no appeal was taken by either party.

In April 2006, Husband filed a motion to modify the original judgment. He asked the court to change the parenting plan so as to give Husband more parenting time.

Wife filed an answer to the motion which was not properly verified.[2] Her answer requested attorney's fees for defending against the requested modification. In December 2006, Husband filed a motion to strike paragraphs 2, 5 and 8 of Wife's answer on the ground that these paragraphs contained statements that were: (1) not sufficient defenses; (2) immaterial and scandalous; (3) not clearly meeting the substance of the averments sought to be denied by Wife; (4) improper attempts to plead affirmative defenses; and (5) frivolous and extraneous. The motion, which did not raise the issue of improper verification, was denied. The court appointed attorney Kevin Easley to serve as guardian ad litem (GAL) for the children. Discovery commenced and continued over the course of approximately one year.

In August 2007, Husband filed an amended motion to modify the original judgment. The amended motion contained three counts: Counts I and II proposed that Husband and Wife each receive 50% of the parenting time. Husband's alternative proposed parenting plans would have required the children to spend every other week during the school year at Husband's house. Count III sought to terminate Husband's obligation to pay Wife maintenance. Wife filed an answer to the amended motion, requesting that the court deny the relief sought by Husband and award her attorney's fees and costs necessary to defend the motion. The parties continued with written discovery and depositions during 2007 and 2008.

In early January 2009, the parties and the GAL deposed the children's counselor, Dr. Michael McGreevy (Dr. McGreevy). Husband had expressed concern that Wife was alienating the children from him. Dr. McGreevy testified, however, that after

---

**2.** Wife's answer contained ·an acknowledgement of her signature by a notary, but it lacked the notarial jurat necessary for verification.

having "been involved with this case for some time now, the person that alienates their children from the father is the father." Dr. McGreevy also testified that Wife was trying to implement the changes he recommended and to act in the children's best interests. Later that month, at the GAL's request, the court ordered a counseling schedule for the parties with Dr. McGreevy. Husband failed to comply with that order.

Husband became aware of Dr. McGreevy's concerns that Husband had been alienating the children. That either occurred during Dr. McGreevy's January 2009 deposition or "one meeting prior to that" in the fall of 2008. In preparation for the pretrial conference scheduled in mid-May 2009, the parties negotiated the issues under Counts I and II of Husband's amended motion to modify concerning custody and visitation. To document these negotiations, Wife prepared a draft of a stipulation to modify the parenting plan which was signed by the GAL, Wife and her attorney.

In May 2009, a pretrial conference was held a few days before the date the modification proceeding was set for trial. At the pretrial conference, after Wife's counsel outlined for the court the difficulties in this case, Husband suddenly withdrew Counts I and II of his amended motion, without any prior notice to Wife. The parties stipulated that the issues of costs, attorney's fees, and GAL fees relating to Counts I and II would be addressed at trial, as well as the remaining issues concerning maintenance raised by Count III. The trial was rescheduled.

The motion to modify was tried in October 2009. Husband testified that he dismissed Counts I and II of his amended motion in the "best interest of the children" after discussing the issue with the GAL on the morning of the pretrial conference. With respect to Count III, Husband's amended motion alleged, *inter alia,* that: (1) Wife's financial condition had improved substantially; (2) Husband's financial ability to pay had decreased; and (3) Wife had unreasonably increased her monthly expenses. During Husband's testimony, he also abandoned these three alleged grounds terminating Wife's maintenance. The only remaining allegation from Count III was that Wife had not made good faith efforts to seek employment or become self-supporting. Husband asserted that this alleged conduct alone constituted a change of circumstances so substantial and continuing as to warrant termination of his maintenance obligation. The following is a summary of the relevant evidence on that issue.

The original judgment was entered in 2003. Prior to that time, Wife received a bachelor's degree from the University of Mississippi in 1985 and obtained a teaching certificate in Mississippi in 1986. Wife never taught or obtained a teaching license in Missouri. Wife had not been employed since 1996, which was the year Nolan was born. Wife testified that she stopped working and became a "stay-at-home mom" in April 1996 pursuant to an agreement between her and Husband. According to Wife, she and Husband agreed that Wife would remain in the home with the children through their high school years. Wife's testimony about the agreement was not refuted by Husband, who provided no testimony or other evidence on that subject at all during the trial.

After entry of the original judgment, the children developed emotional issues that necessitated counseling. Some of those counseling sessions were conducted by Dr. McGreevy, whose deposition was admitted in evidence. Nolan first began seeing Dr. McGreevy following poor performance at school. Both Nolan and Rosemary experienced ongoing anxiety and stress due to

their parents' constant fighting, particularly during their battle over custody.[3] Wife testified that the children's emotional issues also required extra time and attention on her part. When Husband filed his initial motion to modify in 2006 raising issues about the children's custody, Husband expressed strong concerns about the children's care. Husband consistently complained that Wife was not doing a good job with the children. Because of those allegations, Wife focused on trying to do a good job with the children. She wanted to uphold her end of the couple's agreement for Wife to remain at home and care for the children through the end of their high school years. To prepare for reentering the job market when the children were old enough, Wife had taken several classes concerning how to use computers, a class in keyboarding and a class in medical terminology. In early 2009, Wife had applied for employment at St. John's Mercy Health Systems as a patient care representative. This job would have paid $8.65 per hour, but her application was rejected. Wife testified that she could earn only minimum wage.

After the dissolution, Husband married Gayle Miller (Gayle). She worked at Husband's office occasionally, but Husband considered her to be a "stay-at-home mother." Her primary responsibilities involved work around the house. Gayle did tasks like gardening, lawn mowing, electrical repairs and home maintenance. She also chauffeured the children, as well as her own two children, to and from activities. These were the same tasks that Wife performed before Husband and Wife divorced.

As of the date of dissolution in 2003, Wife's reasonable needs were $4,874 per month. At the trial on the motion to modify, Wife testified that her reasonable needs had increased to $6,141 per month. Wife explained that the following expenses had not been considered in 2003:(1) the $629 per month tax burden resulting from her maintenance award; (2) the $448 per month cost of her health insurance; and (3) the $120 per month cost of her dental insurance. If Wife went back to work, she estimated that she would incur another $183 per month in child care expenses that were not considered in the original judgment. This would bring her reasonable needs to $6,324.

The evidence showed that Husband's ability to pay had not decreased. His business continued to grow and was extremely profitable. In the original judgment, Husband's earnings were found to be $12,500 per month. Husband started his current medical practice, a professional corporation, soon after the divorce in 2003. Husband is the sole shareholder of the corporation. He received $646,664 from the corporation in 2008, which is an average of $53,889 per month. The corporation also had retained earnings of $718,000 in 2008. The corporation had $677,329 in cash, bonds and certificates of deposit for which taxes had been prepaid. From May 2006 to May 2009, the corporation's approximate annual net income was $569,000. At trial, Husband admitted that his financial situation had improved substantially since 2003.

With respect to the attorney's fee issue, Wife testified that she had been involved in litigation with Husband every year, except 2005, from the time of the parties' separation in 2000 until the 2009 trial. While Husband's motion to modify was pending, he told Wife that he would make her spend money defending the case.

---

**3.** Dr. McGreevy recommended that Husband needed to stop "wanting to win" to improve his relationship with the children.

Husband said that, by continuing the litigation in the future, he would make sure Wife spent all the money she was awarded. The attorney's fees incurred by Wife to defend against the motion to modify since April 2006 totaled $40,015.66. Wife's Exhibit 17, the draft of a stipulation entitled Modification of Parenting Plan, was admitted in evidence to show the ongoing custody negotiations and the necessity for Wife's related legal fees, from the fall of 2008 through May 2009.

In November 2009, the court entered a judgment addressing Husband's request that maintenance be terminated and Wife's request for attorney's fees. The court found that "[t]he children have had challenges and emotional issues, according to the evidence, both before and continuing after the Judgment was entered in this case." The court further found that:

> [Wife] has not been employed outside the home since before the entry of Judgment. [Wife] testified that she and [Husband] during their marriage discussed and agreed that [Wife] would not be employed outside the home until [the children] graduated high school. [Wife] was, and is, a stay at home mother. . . . [Wife] has recently made an attempt to obtain employment and has been complying with the agreement of the parties that she would be a homemaker and work with the children, who were and are experiencing emotional difficulty before and since the Judgment, until after their high school years. [Wife] testified that she has taken a keyboarding class, a medical terminology class, as well as a data entry class in an effort to update her skills for reentry into the job market. The Court finds from the evidence that [Wife] has been in good faith in her conduct in remaining home with the children and concerning employment outside the home since the Judgment.

As required by § 452.335.2, the court also considered Wife's financial resources and Husband's ability to pay. The court found that Wife's earning capacity, which had not increased since the original judgment, was between minimum wage and $8.50 per hour. The court further found that Wife could not provide for her reasonable needs. The court agreed that Wife had additional monthly expenses which had not been considered in the original judgment. Because Wife "could only earn a minimum wage up to $8.50 per hour," the court reasoned that "[t]his would not cover the additional costs of the expenses not taken into account by the [original judgment]." The court also found that Husband's financial situation had improved substantially since 2003, and Husband's gross monthly income averaged $54,641. Accordingly, the court denied Husband's request to terminate maintenance because the original judgment was not unreasonable.

Concerning Wife's request for attorney's fees, the trial court found that "there was a great deal of time and expense associated with defending Counts I and II of [Husband's] Motion and Amended Motion to Modify." The court further found that "[Husband] has engaged in issues and litigation concerning the children since the [original judgment]. After almost 3 years of litigation of said Motion to Modify requesting a change in custody, [Husband] dismissed or withdrew his Counts I and II without notice." Accordingly, the court determined that "[a]s the result of circumstances in this case, [Husband] shall be responsible for all attorney fees, deposition costs, GAL fees and court costs that [Wife] has incurred in connection with defending the actions under Counts I and II of [Husband's] Motion." Finally, the court also noted that Husband similarly abandoned most of his allegations relating to Count III at trial without notice. The court

found "this strategy to be in keeping with [Husband's] position on Counts I and II that after years of litigation and without notice he simply dismisses his claims to attempt to gain some advantage in his case." The court therefore entered judgment for Wife and against Husband in the amount of $40,015.66 as attorney's fees.

## Point I

■ In Husband's first point, he chal-. lenges the trial court's finding that Wife has acted "in good faith in her conduct in remaining home with the children and concerning employment outside the home since the [original judgment]." Husband contends the greater weight of the evidence established that Wife failed to meet her obligation to make a good faith effort to seek and obtain employment, and achieve a self-supporting status since 2003. We disagree.

■ In order to justify the modification of a maintenance award, a party must show changed circumstances so substantial and continuing as to make the terms of the original decree unreasonable. § 452.370.1. "The party seeking modification has the burden to prove changed circumstances with detailed evidence." *McKown v. McKown*, 280 S.W.3d 169, 172 (Mo.App. 2009); *Runez v. Runez*, 68 S.W.3d 608, 609–10 (Mo.App.2002). To prove changed circumstances in a modification proceeding, there must be a departure from prior known conditions. *Runez*, 68 S.W.3d at 610.

■ A party receiving maintenance is under a continuing duty to make reasonable efforts to attain self-sufficiency and will not be permitted to benefit from inaction. *Id.* "A recipient of maintenance is not required to become self-supporting, but must make reasonable efforts toward that goal." *Id.* The failure of a spouse receiving maintenance to seek and obtain employment without good cause is a changed circumstance justifying modification of a maintenance award. *Hartzell v. Hartzell*, 976 S.W.2d 624, 626 (Mo.App. 1998); *Markowski v. Markowski*, 736 S.W.2d 463, 466 (Mo.App.1987). "A court must consider the obligation of a spouse to contribute to his or her own support, absent circumstances preventing such contribution." *Hartzell*, 976 S.W.2d at 626. Circumstances preventing a spouse receiving maintenance from seeking employment include the need for the spouse "to devote extra time and attention to her children during the time after the divorce, because they were having emotional difficulties related to the divorce." *Bauer v. Bauer*, 28 S.W.3d 877, 882 (Mo.App.2000); *see also* § 452.335.1(2) (authorizing a trial court to grant maintenance if it finds that the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs and "is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home"); *Newport v. Newport*, 759 S.W.2d 630, 633–35 (Mo.App.1988) (affirming a maintenance award based on an agreement that wife would stay home to care for the parties' children); *Vehlewald v. Vehlewald*, 853 S.W.2d 944, 953–54 (Mo.App.1993) (similar holding).

Relying on *Hartzell* and *Markowski*, Husband asserts that Wife's failure to seek and obtain employment since the dissolution "is by itself, a substantial and continuing change of circumstances that makes the maintenance award unreasonable at this time." Husband points to Wife's testimony that she only recently sought one job and specifically argues that the trial court's determination that Wife acted in good faith concerning employment is against the weight of evidence. Husband's argument, however, focuses on only part of the court's good faith determination, which not only listed her efforts to obtain em-

ployment, but more importantly, explained the circumstances preventing her from working outside the home. *See, e.g., Bauer,* 28 S.W.3d at 882. The court specifically found that: (1) the parties had an agreement that Wife would stay at home to care for the children through their high school years; and (2) the children were experiencing emotional difficulties that also made it appropriate for Wife to remain home.[4] In his reply brief, Husband acknowledges these two findings. He simply argues that both are against the weight of the evidence. We find these arguments unpersuasive.

With respect to the first finding concerning the parties' agreement that Wife stay home with the children, Husband emphasizes that the alleged agreement was not recited in the original judgment and was proven only by Wife's testimony. The trial court obviously believed Wife's testimony, and this Court defers to the trial court's determinations of credibility. *Souci v. Souci,* 284 S.W.3d 749, 753 (Mo.App. 2009); *In re Marriage of Colley,* 984 S.W.2d 163, 166 (Mo.App.1998). Moreover, the trial court was entitled to consider the fact that Husband did not deny the existence of the agreement during his testimony. The evidence also showed that Husband's new spouse, Gayle, was a "stay-at-home mother" and that she performed the same basic duties at home that Wife did during the parties' marriage.

With respect to the second finding concerning the emotional difficulties of the children, Husband argues the testimony at trial did not sufficiently describe the children's difficulties. As support for that argument, Husband points to a few excerpts from Dr. McGreevy's deposition describing the children's coping skills and improvements over time. Other parts of that same deposition, however, reveal that the children had serious emotional difficulties which required ongoing therapy. Dr. McGreevy determined that those difficulties had been exacerbated by the parties' three-year custody battle, which was initiated by Husband and then abandoned. It was for the trial court to determine the appropriate weight to be given to Dr. McGreevy's testimony, and this Court defers to that determination. *Souci,* 284 S.W.3d at 753; *Colley,* 984 S.W.2d at 166. Moreover, Husband challenged custody based upon his allegation that Wife was not doing a good job caring for the children. Because of this allegation, Wife remained at home and focused on doing a good job with the children. Alternatively, Husband alleged that Wife's maintenance should be terminated because she should be employed, rather than remaining at home with the children. These inconsistent, alternative allegations placed Wife on the horns of a dilemma. Whatever choice Wife made, Husband then would have the ability to use that choice against Wife by arguing that he was entitled to relief on the other, alternative allegation. The trial court was not required to permit Husband to place Wife in this catch–22 situation.

We do not have the firm belief that either of the above findings is wrong. *See Simpson v. Strong,* 234 S.W.3d 567, 578 (Mo.App.2007). Therefore, the findings are not against the weight of the evidence. *Id.* Point I is denied.

---

4. These two findings distinguish this case from *Markowski,* upon which Husband principally relies. In *Markowski,* there were no circumstances, particularly with respect to the children, that prevented wife from seeking and obtaining employment. *Markowski,* 736 S.W.2d at 464–65. The western district of this Court concluded that the trial court did not abuse its discretion in deciding that wife's failure to seek and obtain employment without good cause constituted a change in circumstances that justified termination of maintenance payments. *Id.* at 466.

## Point II

In Husband's second point, he contends the trial court erred by relying on Wife's testimony about the parties' agreement that she stay home with the children because such an alleged agreement, as a matter of law, would not excuse Wife's failure to make a good faith effort to become employed and self-sustaining since the dissolution. Husband asserts that he "has not found a single Missouri decision that recognizes such an agreement, or finds that an agreement like this (even if adequately proven) would excuse the statutory duty of a spouse, as explained by case law over the last 30 years, to seek employment and become self-supporting after a divorce." We disagree.

In *Newport v. Newport*, 759 S.W.2d 630 (Mo.App.1988), this Court affirmed an award of maintenance based on a similar agreement that wife would stay home to care for the parties' children. *Id.* at 633. This Court explained:

> There is an emphasis on self-sufficiency in the dissolution law, but that emphasis must give way to other considerations where the wife has remained at home, foregoing a career for many years, in order to care for young children. When the parties have adopted a lifestyle in which the husband works and the wife has stayed at home to care for small children, and, where it is economically feasible for the wife to continue to do so after the dissolution, it is appropriate that she not be required to seek employment outside the home. The evidence here justifies an award of maintenance.

*Id.* at 634–35 (internal citations omitted). Similarly, in *Vehlewald v. Vehlewald*, 853 S.W.2d 944 (Mo.App.1993), the eastern district of this Court upheld an award of maintenance based on wife's testimony "that the parties had decided that it was in the best interests of the child that one parent, namely [w]ife, remain at home full-time." *Id.* at 953. The Court concluded that "[i]t was economically feasible for her to continue this arrangement after dissolution. Under these circumstances, the trial court acted within its discretion in not requiring [w]ife to seek employment outside the home." *Id.*

In Husband's reply brief, he attempts to distinguish these two cases by arguing that both are based on an initial award of maintenance and not a motion to modify maintenance. He maintains that the alleged agreement in this maintenance modification case "is by itself" insufficient to excuse her from efforts to become self-supporting for over six years. In cases involving both maintenance modification and an initial maintenance award, however, "[a] court must consider the obligation of a spouse to contribute to his or her own support, absent circumstances preventing such contribution." *Hartzell v. Hartzell*, 976 S.W.2d 624, 626 (Mo.App.1998) (maintenance modification) (citing *Chambers v. Chambers*, 910 S.W.2d 780, 784 (Mo.App. 1995) (maintenance award)). Here, the trial court relied not only on the agreement to support its finding that Wife acted in good faith by staying home with the children, but also upon the evidence concerning the children's emotional difficulties that made it appropriate that Wife stay home and care for them. These difficulties were particularly manifest throughout the three-year custody battle initiated by Husband and required ongoing therapy. Accordingly, the trial court did not err by relying, in part, on the parties' agreement in determining that Wife acted in good faith concerning her employment. Point II is denied.

## Point III

In Husband's third point, he takes issue with the trial court's finding that Wife's expenses had increased. Husband con-

tends the trial court abused its discretion by relying on Wife's testimony that her living expenses had increased. Husband argues that Wife's testimony was "mathematically impossible" and not credible. According to Husband, Wife's income and expense statement (which was admitted in evidence at trial as an exhibit) contained inflated expenses that the court should have found were inaccurate. As noted above, the trial court found Wife to be a credible witness and specifically believed Wife's testimony about her increased expenses. We defer to that credibility determination. *Ronquille v. Ronquille,* 263 S.W.3d 770, 773 (Mo.App.2008). Husband is asking us to re-weigh the evidence, which is not our function. *Miller v. Miller,* 309 S.W.3d 428, 435 (Mo.App.2010). Point III is denied.

### Point IV

■■■ In Husband's fourth point, he contends that the trial court erred by failing to modify the original judgment to eliminate the requirement that Husband maintain a life insurance policy naming Wife as beneficiary to secure the payment of maintenance. Husband argues that such a provision is void as a matter of law.

■■■ The provision about which Husband complains was in the original judgment, from which Husband did not appeal. The trial court denied Husband's motion to modify, which left the original judgment intact. The argument advanced here is not an attack upon the validity of the entire original judgment, but only an attack upon one provision therein that is claimed to be void. It is undisputed that the trial court had jurisdiction over the parties and the subject matter when the original judgment was entered. That judgment became final and was not appealed by Husband. Unless the original judgment was reversed or annulled in some proper proceeding, its provisions are not open to contradiction, impeachment or modification in any collateral proceeding. *Timmons v. Timmons,* 139 S.W.3d 625, 629 (Mo.App.2004). A collateral proceeding is an attempt to impeach the judgment in a proceeding not instituted for the express purpose of annulling the judgment. *Id.* As this Court held in *Shockey v. Curtis,* 971 S.W.2d 320 (Mo.App.1998), a judgment rendered by a court with jurisdiction over the parties and subject matter is not open to collateral attack with respect to its validity or the conclusiveness of the matters adjudicated. *Id.* at 323. The aggrieved party's remedy is by appeal, rather than by a motion to modify. *Id.; see In re Marriage of Rolfes,* 187 S.W.3d 355, 356–57 (Mo.App.2006) (holding that the trial court had no authority to change a life insurance provision relating to maintenance in the original judgment, which had not been appealed). Assuming the inclusion of the life insurance provision in the original judgment was erroneous, that was a mere irregularity that did not render the judgment void and subject to collateral attack. *La Presto v. La Presto,* 285 S.W.2d 568, 570–71 (Mo.1955); *Allen v. Allen,* 433 S.W.2d 580, 584 (Mo.App.1968). Point IV is denied.

### Point V

■■■ In Husband's fifth point, he contends the trial court erred in awarding Wife attorney's fees because Wife "was in default in that she failed to file a properly verified responsive pleading." Husband argues that he raised this issue in his motion to strike Wife's answer.

■■■ Our review of that motion reveals that Husband is simply wrong. The issue of improper verification was not raised therein. The first time this issue was brought to the trial court's attention was in Husband's proposed judgment, which was filed after the trial had concluded. By not raising the issue and proceeding to trial,

Husband waived any purported defect in the verification of Wife's answer. *See Rodden v. State,* 795 S.W.2d 393, 395 (Mo. banc 1990); *Rains v. Moulder,* 338 Mo. 275, 90 S.W.2d 81, 86 (1936); *In re Fugett's Estate,* 564 S.W.2d 628, 630 (Mo.App. 1978). More fundamentally, Husband's argument fails because Wife would not have been in default even if she had failed to file any answer to the motion to modify. "[T]here is no duty to file a responsive pleading when a motion to modify is filed." *Martz v. Martz,* 323 S.W.3d 53, 60 (Mo. App.2010); *see In re Marriage of Alred,* 291 S.W.3d 328, 331 (Mo.App.2009); *Cramer v. Carver,* 125 S.W.3d 373, 376 (Mo.App.2004); *Peace v. Peace,* 31 S.W.3d 467, 471 (Mo.App.2000). Point V is denied.

### Points VI and VII

■ In Husband's sixth and seventh points, he contends the trial court abused its discretion in awarding Wife attorney's fees. In Point VI, Husband argues that the court improperly awarded Wife attorney's fees on the ground that he had unreasonably increased Wife's attorney's fees by unilaterally dismissing Counts I and II pertaining to custody when Husband simply followed the recommendations of both Dr. McGreevy and the GAL. In Point VII, Husband argues that the trial court improperly relied on settlement negotiations, specifically Wife's Exhibit 17, in making the award. We disagree with both arguments.

■ "Missouri courts generally follow the 'American rule,' which provides that each party should bear his or her own litigation expenses." *Wansing v. Wansing,* 277 S.W.3d 760, 770 (Mo.App.2009). A trial court, however, may order one party to pay the other's attorney's fees and costs where such is authorized by statute. *Id.* In a dissolution action, § 452.355.1 provides that the trial court may award attorney's fees to a party after "considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action...." *Id.* When considering the parties' financial resources, a spouse's inability to pay is not a requirement for awarding attorney's fees. "[O]ne spouse's greater ability to pay is sufficient to support an award of attorney fees." *In re Marriage of Lindeman,* 140 S.W.3d 266, 279 (Mo.App.2004) (affirming an award where husband was earning a "lucrative income" and there was a "substantial disparity" between the parties' incomes); *Woolsey v. Woolsey,* 904 S.W.2d 95, 101 (Mo.App.1995) (affirming wife's attorney's fee award of $30,000; husband "will not be economically oppressed by the award" compared to wife who would be, as she paid the bulk of her attorney's fees with borrowed funds); *see Bussen v. Bussen,* 273 S.W.3d 90, 93 (Mo.App.2008) (similarly affirming award of attorney's fees based on a "significant disparity in financial resources").

■ In addition, a party's actions during the pendency of litigation may be considered in determining whether to make an award for attorney's fees, especially when those fees were the result of the other party's conduct. *See Long v. Long,* 135 S.W.3d 538, 545 (Mo.App.2004) (award of partial attorney's fees to wife was not an abuse of discretion because the trial court believed husband's actions caused the litigation fees and expenses to be higher than normal); *Adair v. Adair,* 124 S.W.3d 34, 40–41 (Mo.App.2004) (husband's conduct during the litigation increased wife's attorney's fee expenses); *Bauer v. Bauer,* 38 S.W.3d 449, 457–58 (Mo.App.2001) (husband caused the trial to be "unduly protracted"). Moreover, "[i]n awarding attorney's fees, the trial court is considered an expert in the necessity, reasonableness, and value of the legal services." *In re Fuldner,* 41 S.W.3d 581, 596 (Mo.App.2001).

Here, we find no abuse of discretion in awarding Wife attorney's fees, based primarily on Husband's greater ability to pay and the substantial disparity between the parties' incomes. *Lindeman,* 140 S.W.3d at 279; *Woolsey,* 904 S.W.2d at 101; *see Bussen,* 273 S.W.3d at 93. Husband admitted, and the trial court found, that Husband's financial situation had substantially improved since the original judgment was entered. The court found that Husband's average gross monthly income was $54,641. On the other hand, the court found that Wife could not provide for her reasonable needs and that she could earn only minimum wage up to $8.50 an hour at best. In addition, contrary to Husband's argument, the evidence does show Husband's conduct increased Wife's attorney's fees. To the extent the court relied on that conduct in awarding Wife attorney's fees, the court acted well within its discretion. *See* § 452.355.1; *see, e.g., Long,* 135 S.W.3d at 545; *Adair,* 124 S.W.3d at 40–41; *Bauer,* 38 S.W.3d at 457–58. Lastly, our reading of the record shows that Wife's Exhibit 17 was admitted only to show the recent, ongoing discussions regarding custody, months after Husband first became aware that his conduct in requesting a change of custody was not in the children's best interest. Husband's continued litigation of the custody issue did increase Wife's attorney's fees. There is no indication in the record that the court otherwise relied on the negotiations to award Wife attorney's fees. Because the trial court did not abuse its discretion by awarding Wife attorney's fees on improper grounds, Points VI and VII are denied.

The judgment of the trial court is affirmed.

SCOTT, C.J., and FRANCIS, J., concur.